**PATTERN MAKERS' ASSOCIATION OF DETROIT AND VICINITY, Pattern Makers' League of North America, AFL–CIO, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 78–1011.**

United States Court of Appeals, Sixth Circuit.

Argued April 14, 1980.

Decided June 5, 1980.

George M. Mauer, Jr., Kenneth W. Kalls, Detroit, Mich., for petitioner.

Elliott Moore, John D. Burgoyne, Deputy Associate Gen. Counsel, Michael Messitte, N. L. R. B., Washington, D. C., for N. L. R. B.

Before WEICK, Circuit Judge, and PHILLIPS and PECK, Senior Circuit Judges.

HARRY PHILLIPS, Senior Circuit Judge.

This case is before the court on the petition of the Pattern Makers' Association of Detroit and Vicinity (the Union) to review an order of the National Labor Relations Board issued against the Union on November 14, 1977, and reported at 233 N.L.R.B.

No. 77. The Board has cross-applied for enforcement of its order. Reference is made to the reported decision of the Board for a recitation of pertinent facts. We grant enforcement, but remand.

The Union entered into a collective bargaining agreement with the Michigan Pattern Makers' Association (the Employers' Association), which represents seven employer members in their collective bargaining negotiations with the Union. This collective bargaining agreement was in effect from September 1, 1974 through August 31, 1977, the period during which the present dispute arose.

Pursuant to a provision of the agreement, the Union maintained a job referral system, or hiring hall, under which unemployed union members were referred to employers represented by the Employers' Association to fill job vacancies. Although the collective bargaining agreement does not expressly so provide, the Union's hiring hall has found by the Board to be an implied exclusive job referral system and the employers' only source of employees.

The Union's hiring hall operates under a rule which provides that the Union shall endeavor to secure employment for its members in the order in which their names appear on the out-of-work list. In the usual case, when a union member becomes unemployed, his name is placed at the bottom of that list and works its way up as persons ahead of him are referred for jobs. For approximately 30 years, however, the Union has followed the practice of inserting the names of its current Executive Committee members, former Business Managers and former Assistant Business Managers at the top of the out-of-work list. The Union says such priorities are necessary to counteract employers' propensity to lay off union officers before rank-and-file members. It is this preferential treatment of Union officers which lies at the heart of this controversy.

Before 1958, only one member was referred for each job opening. This was called the rule-of-one. Employers objected to this practice, however, because occasion-ally they found the person referred by the Union was one they previously had dismissed for cause.

In response to this problem, the Union changed over in 1958 to a rule-of-five. That is, the Union referred the five members whose names appeared at the top of the out-of-work list, and the employer could hire any of those five. The rule-of-five remained in effect until May of 1976.

The Union says despite the fact that officers received first priority in the referral system, they had difficulty obtaining work under the rule-of-five. Specifically, the Union claims employers deliberately selected rank-and-file members rather than officers from among the five persons referred. To counteract this alleged discrimination against officers, the Union reverted in May of 1976 to the rule-of-one in its hiring-hall referrals.

On August 30, 1976, the Employers' Association filed charges with the Board alleging the Union's practice of giving first priority to officers in job referrals, its unilateral reversion to the rule-of-one, and its alleged threats to strike in order to enforce the unilateral reversion were unfair labor practices.

The Board concluded, in agreement with the Administrative Law Judge, that by unilaterally changing the operation of its referral procedure from the rule-of-five to the rule-of-one, and by threatening to strike unless the Employers' Association members accepted this change, the Union had refused to bargain collectively in good faith with the Association. The Board further concluded that the Union violated Sections 8(b)(1)(A) and 8(b)(2) of the Act by placing the names of current Executive Committee members, former Business Managers and former Assistant Business Managers at the top of the out-of-work list, thereby giving them referral preference.

Accordingly, the Board ordered the Union to cease and desist from placing the names of Union leaders at the top of the out-of-work list, from making any unilateral changes in the operation of its hiring hall

and from threatening to strike in order to force compliance with such unilateral changes. Affirmatively, the Union was ordered immediately to resume operating its hiring hall under the rule-of-five and to continue doing so until the Union and Employers' Association either agreed on a substitute referral system or reached a bona fide impasse on the issue. The Board also ordered the Union to notify in writing the Association, each constituent employer member thereof, and each member of the Union that the rule-of-five has been reinstated; and to post appropriate notices.

The Board's actions were based on its finding that the representational duties of the Executive Committee members and former Union officials do not require their presence in the workplace. In contrast to Shop Captains, who play an active role in representing Union members on the job and whose "superseniority" the Board did not challenge, Executive Committee members are primarily administrators, the Board found. Hence, their hiring-hall priority is not justified by legitimate representational needs, the Board concluded.

We find substantial evidence on the record as a whole to support the findings of the Board. *Universal Camera Corporation v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). Accordingly, enforcement of the Board's order is granted. *Cf. Teamsters Local 20 v. NLRB*, 610 F.2d 991 (D.C. Cir.1979) (all purpose superseniority for union stewards goes beyond what is necessary to allow stewards to carry out their representational duties effectively and, therefore, violates NLRA § 8(b)(2) and § 8(a)(3)); *NLRB v. Local 443, Intl. Brotherhood of Teamsters*, 600 F.2d 411 (2d Cir. 1979) (all purpose superseniority for union stewards violates the NLRA, but superseniority for shift selection purposes is justified where it makes a steward more accessible to his coworkers); *D'Amico v. NLRB*, 582 F.2d 820 (3d Cir. 1978) (layoff superseniority for a union's recording secretary is justified where she participates informally in grievance processing, advises stewards on contract interpretation and performs other representational functions related to her presence in the workplace); *NLRB v. Milk Drivers & Dairy Employees Local 338*, 531 F.2d 1162 (2d Cir. 1976) (all purpose superseniority for union stewards violates the NLRA; the Union's need to encourage capable workers to become stewards is not a justification); *NLRB v. Plumbers & Pipefitters Local 633*, 424 F.2d 390 (6th Cir. 1970) (union's practice of giving members preference over nonmembers in hiring-hall referrals encourages union membership in violation of NLRA § 8(b)(2) and § 8(a)(3)). *See also The Paintsmiths, Inc. v. NLRB*, 620 F.2d 1326 (8th Cir. No. 79–117, Apr. 30, 1980) (union violated NLRA § 8(b)(2) by requiring the employer to replace an employee already assigned to a painting job with a nonemployee steward; the union offered no substantial reason why it could not have appointed one of the already assigned employees as steward); *NLRB v. Local Union No. 80*, 491 F.2d 1017 (6th Cir. 1974) (holding a union in contempt for continuing to discriminate against nonmembers in its hiring-halls referrals despite its prior consent to cease such discrimination).

Although the Board's order is entitled to enforcement as it stands, we feel the NLRB may wish to consider modification thereof in light of more recent developments in the case. The record discloses that on September 1, 1977, a new collective bargaining agreement between the Union and the Employers' Association went into effect, and that the agreement was ratified by the Union's membership on January 23, 1978. Included in the agreement is a letter of understanding specifying the hiring hall is to be operated under a modified rule-of-five that gives employers a choice among union members but protects officers against potential hiring discrimination. The case is remanded to the Board which will be empowered to modify its order as it deems appropriate in light of the new collective bargaining agreement and letter of understanding.

No costs are taxed. Each party will bear its own costs on this appeal.