**Elba E. WROBLASKI,
Plaintiff-Appellant,**

v.

**Robert E. HAMPTON, Chairman of the United States Civil Service Commission, et al., Defendants-Appellees.**

No. 75–1332.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 9, 1975.

Decided Jan. 22, 1976.

Rehearing and Rehearing En Banc Denied Feb. 24, 1976.

Nathan T. Notkin, Chicago, Ill., for plaintiff-appellant.

Samuel K. Skinner, U. S. Atty., Floyd Babbitt, Asst. U. S. Atty., Chicago, Ill., for defendants-appellees.

Before STEVENS, Circuit Justice,* FAIRCHILD, Chief Judge, and CAMPBELL, Senior District Judge.**

PER CURIAM.

Plaintiff Wroblaski has appealed from summary judgment by the District Court affirming a decision of the Board of Appeals and Review of the United States Civil Service Commission that plaintiff was properly separated from her position with the Immigration and Naturalization Service (INS).

The scope of judicial review of orders of the Civil Service Commission is narrow, limited to ensuring that the required procedures have been followed and that the action taken was not arbitrary or capricious. *Pauley v. United States,* 419 F.2d 1061, 1065 (7th Cir. 1969). This test does not require that the agency's decision be supported by "substantial evidence," but only that it have a rational basis. *Wood v. United States Post Office Department,* 472 F.2d 96, 99 n. 3 (7th Cir.) *cert. denied,* 412 U.S. 939, 93 S.Ct. 2775, 37 L.Ed.2d 399 (1973).[1]

---

* Mr. Justice Stevens participated initially as Circuit Judge; on and after December 19, 1975 he participated as Circuit Justice.

** The Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois, is sitting by designation.

1. As in *Wood,* federal court jurisdiction in this case is founded on the Administrative Procedure Act, 5 U.S.C. 701 et seq. Thus, the scope of review is governed by 5 U.S.C. § 706. Since no agency hearing was required by statute, but only by regulation, the substantial evidence requirement set forth in § 706(2)(E) does not apply.

■ Several charges[2] were made against plaintiff, all growing out of the same incidents relating to her relationship with three Mexican nationals who admittedly stayed in her home for various periods of time and who looked after plaintiff's children and performed various other domestic charges. The INS characterized that relationship as one of employment; since the three Mexican nationals had only non-immigrant visitors' visas, their employment as domestics would make them subject to deportation.[3] Plaintiff, on the other hand,

---

2. The exact charges were as follows:

CHARGE I—UNETHICAL CONDUCT
Specifications:
1. In that you, an employee of the Immigration and Naturalization Service, Department of Justice, did from about October, 1971, to about July 15, 1972, hire and employ as a domestic servant in your home Benita Encarnacion Ruiz-Mesa, knowing that she then was a nonimmigrant visitor to the United States not legally permitted to be so employed.
2. In that you, an employee of the Immigration and Naturalization Service, Department of Justice, did from about August 4, 1972, to about August 11, 1972, hire and employ as a domestic servant in your home Maria Elizabeth Guadalupe Robledo-Gonzalez, knowing that she then was a nonimmigrant visitor to the United States not legally permitted to be so employed.
3. In that you, an employee of the Immigration and Naturalization Service, Department of Justice, did from about August 18, 1972, to the present, hire and employ as a domestic servant in your home Ignacia Guzman-Gonzalez, knowing that she then was a nonimmigrant visitor to the United States not legally permitted to be so employed.

CHARGE II—MAKING FALSE STATEMENTS ON SERVICE DOCUMENT
Specifications
1. In that you, an employee of the Immigration and Naturalization Service, Department of Justice, did on December 13, 1971, in an Application to Extend Time of Temporary Stay, Immigration and Naturalization Service Form I-539, in behalf of Benita Encarnacion Ruiz-Mesa, fill out and complete (a) in answer to Item 8, "Reason for coming to the United States" the words "To visit relatives";
(b) in answer to Item 9, "Reason for requesting extension" the words "To visit with niece";
(c) in answer to Item 17, "Occupation", the word "None"; and
(d) in answer to Item 19, "(Insert 'Have' or 'Have Not')
I ................. been employed or engaged in business in the United States. If you have been employed or engaged in business in the United States, complete the rest of the block", the words "Have not", whereas in fact said Benita Encarnacion Ruiz-

Mesa was then hired and employed by you as a domestic servant in your home.
CHARGE III—MAKING FALSE STATEMENTS UNDER OATH
Specifications
1. In that you, an employee of the Immigration and Naturalization Service, Department of Justice, did on December 1, 1972, after having been duly sworn to tell the truth, falsely testify that you did not tell your supervisor, Wallace Gray, or any other Immigration and Naturalization Service employee in Chicago or in Laredo, Texas, that Miss Robledo was a relative of yours, whereas in fact you did so assert on or about August 4, 1972, to Immigration Inspector Carl L. Whitesides, Jr., at Laredo, Texas, and on the same date by telephone to Supervisory Immigrant Inspector Wallace Gray, then in Chicago, that Miss Robledo was your relative.
2. In that you, an employee of the Immigration and Naturalization Service, Department of Justice, did on December 1, 1972, after having been duly sworn to tell the truth, falsely testify that said persons, Benita Encarnacion Ruiz-Mesa, Maria Elizabeth Guadalupe Robledo-Gonzalez, and Ignacia Guzman-Gonzalez, were not employed as domestic servants in your home, whereas in fact they had so been employed by you, as set forth in Charge I above.

Specification 1(a) of Charge II was found by the INS hearing officer to be unsupported and was dropped. The Board of Appeals and Review considered only Charge I, considering that charge to be sufficiently serious to warrant termination of the plaintiff's employment.

3. See 8 U.S.C. § 1251(a)(9):
"Any alien in the United States . . . shall, upon the order of the Attorney General, be deported who—
(9) was admitted as a nonimmigrant and failed to maintain the nonimmigrant status in which he was admitted . . . or to comply with the conditions of any such status . . . ."
and 8 CFR § 214.1(c):
"(c) *Employment.* A nonimmigrant in the United States in a class defined in section 101(a)(15)(B) of the Act as a temporary visitor for pleasure . . . may not engage in any employment. Any other nonimmigrant in the United States may not engage in any employ-

contends that these women were guests in her home, and that their care of her children and performance of other tasks around the home were no more than any house guest in a Mexican home would undertake.

Plaintiff does not deny that the proper agency procedures were formally followed in her case.[4] Rather, she contends that the action taken against her was arbitrary and capricious in that the decision of the hearing officer was based upon inadmissible evidence, the hearing officer used an incorrect standard of proof, and the decision to remove was based upon prejudice and bias against the defendant.[5]

The view which the Board of Appeals and Review took of the case makes these contentions irrelevant.[6] The position taken by the Board was that certain facts, which the record shows to be un-disputed, were sufficient to show that plaintiff "used her knowledge and her position to controvert the law for personal reasons, contrary to the trust and high degree of integrity required of someone in her position, an action which is not in the best of interests of the service and which does not promote the efficiency of that service." Board Opinion at 5.

The Board concluded that the three aliens performed tasks in Mrs. Wroblaski's home which had to be performed, and that Mrs. Wroblaski paid at least some of their traveling expenses, provided them with room and board, and in at least one instance gave one of the aliens a gift of money. The Board also noted the undisputed fact that in one instance the plaintiff used her position as an INS officer to aid an alien in entering the country.[7]

ment unless he has been accorded a nonimmigrant classification which authorizes employment or he has been granted permission to engage in employment in accordance with the provisions of this chapter."

4. Plaintiff received advance notice of the proposal to separate her from the service, and of the charges on which the proposed removal was based. She was informed of her right to review the material on official time, and of her right to a predecision hearing. Plaintiff, through counsel, submitted a written answer to the notice; and a hearing was held, before a hearing officer, at which plaintiff presented evidence. The hearing officer recommended that she be discharged. Plaintiff then appealed within the Service; the discharge was confirmed. She next appealed to the Chicago Regional Office of the Civil Service Commission. The Regional Office found that all procedural regulations had been met, but that the order of discharge was not supported by clear and substantial evidence of conduct which would warrant the "ultimate penalty of removal," and ordered that plaintiff be reinstated. The INS then appealed to the Board of Appeals and Review, which reversed the order of the Regional Office. Plaintiff then filed this action in the District Court.

5. In her brief, plaintiff also argues that the INS failed to comply with its own regulations requiring that any investigation of an employee where preference of charges may result must be made by an officer from the Regional or Central Office or from a District or Sector other than that in which the alleged offense occurred, and therefore any evidence resulting from the investigation must be excluded. This argument must be rejected for three reasons: (1) the record shows that there was substantial compliance with the regulation in that most of the evidence was compiled by officers from Districts other than Chicago; (2) failure to comply with the regulation would not necessarily result in exclusion; and (3) most importantly, the argument was not presented to the District Court and therefore, in the absence of good reason to the contrary, should not be considered on appeal.

6. The allegation of bias would not be irrelevant if it indicated that the plaintiff was treated differently from others in that the adverse action taken against her was separation from the Service rather than some lesser form of disciplinary action. There is evidence in the record, however, that separation for this offense was not inconsistent with action taken for other serious offenses. And the Board of Appeals found that separation would promote the efficiency of the service. Decision of the Board of Appeals and Review, *In re Wroblaski*, at 5.

7. Maria Elizabeth Guadalupe Robledo-Gonzalez was traveling with the Wroblaskis in their car. The inspection officer at the border did not wish to admit her. Mrs. Wroblaski then called an associate in Chicago who told the inspection officer that he could defer Maria's inspection until she reached Chicago. The inspection officer then admitted Maria as a visitor.

The INS requires that its employees be circumspect in their dealings with aliens so that they will not bring disrespect on the service. For example, the INS Officers' Handbook (Record Vol. 2 at 90) states:

"Officers of this Service shall avoid involvement in any conflict of interest situation, i. e., one in which a private interest (usually of an economic nature) conflicts or raises a reasonable question of conflict with official duties and responsibilities. The potential conflict is of concern whether it is read or apparent." Handbook at 2.

and

"Any association, business, social, or otherwise, which may obligate, or appear to obligate, you to an alien in any way should be carefully avoided. Such obligation can become a serious barrier to the proper enforcement of the law and may bring criticism both to you and to the Service." at 7.

As an officer of the INS, plaintiff was required to be familiar with these obligations. Thus, plaintiff was on notice that INS officers are expected to avoid not only obligations to aliens, but also the appearance of being obligated to aliens.

The Board concluded that there was an exchange of "considerations," that is, valuable services, and decided that it was irrelevant whether or not the parties involved actually considered that they were entering into an employment relationship. As the Board said, "the nomenclature is not the issue here but whether individual services were utilized in spite of existing laws prohibiting them." Board Opinion at 5.

On this record, we cannot conclude that this decision by the Board was without rational basis. Whether or not an actual employment relationship existed, there was certainly the appearance of one. There is no doubt that the aliens in fact performed services for plaintiff; there was, therefore, a rational basis for concluding that her obligations to them might bring criticism both to her and to the Service. As stated in its Officers'

Handbook, the INS has a proper interest in ensuring that its officers do not appear to violate the laws they are employed to enforce.

Affirmed.