Peter D. BORSARI, Petitioner,

v.

FEDERAL AVIATION
ADMINISTRATION,
Respondent.

Merit Systems Protection Board,
Intervenor.

No. 533, Docket 82–4140.

United States Court of Appeals,
Second Circuit.

Argued Dec. 6, 1982.

Decided Feb. 1, 1983.

James R. Moffatt, Mineola, N.Y., for petitioner Peter D. Borsari.

Richard A. Simpson, Asst. U.S. Atty., New York City (John S. Martin, Jr., U.S. Atty., Peter C. Salerno, Asst. U.S. Atty., New York City, of counsel), for respondent F.A.A.

Mary M. Jennings, Atty., Merit Systems Protection Bd., Washington, D.C. (Evangeline W. Swift, Gen. Counsel, Rita S. Arendal, Washington, D.C., Atty., Merit Systems Protection Bd., of counsel), for intervenor Merit Systems Protection Bd.

Before FEINBERG, Chief Judge, and KAUFMAN and CARDAMONE, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

The merit system lies at the heart of the American civil service. The Civil Service Reform Act of 1978 guarantees that federal employment decisions will not be based on extraneous factors such as race, color, religion, sex, or national origin. That statute also protects federal employees from being penalized for certain types of off-duty misconduct. Federal agencies, however, were never intended to be restrained from taking steps necessary to safeguard the public. Because we find the dismissal of air traffic controller Peter D. Borsari resulted not from invidious discrimination, but rather from the Federal Aviation Administration's ("FAA" or "Agency") legitimate concern for public safety, we hold that the Merit Systems Protection Board ("MSPB" or "Board") did not ignore the merit principles of the Civil Service Reform Act when it upheld the FAA's decision. The FAA acted within its discretion when it discharged Borsari for his involvement with illegal drugs.

## I

After having served seven years as an air traffic controller at La Guardia Airport, Borsari was notified, on December 14, 1979, of his proposed removal and transferred to other duties. His supervisor, Frank J. Bombace, informed Borsari of four reasons for the contemplated discharge. Petitioner was charged with sale and possession of marijuana, possession of cocaine, having been convicted of unlawful possession of marijuana, N.Y. Penal Law § 221.05 (McKinney 1980), and falsification of official government records.[1] Bombace's suggestion that Borsari be dismissed was reviewed and approved by the FAA official assigned to interview Borsari and his lawyer, and, subsequently, by an FAA deciding official, Norbert A. Owens, who also determined Borsari should be dismissed. Although Borsari had received outstanding ratings for job performance, he was discharged effective March 21, 1980.

Borsari appealed his removal to the Merit Systems Protection Board, pursuant to 5 U.S.C. §§ 7513, 7701, and a hearing was held before presiding official Joan Dolan on June 17 and 18, 1980. After receiving testimony, Dolan found the FAA had sustained its burden of proving by a preponderance of the evidence that Borsari was guilty of each of the three drug charges which were the subject of the proceeding. Specifically, she accepted the testimony of Officers Anderson and Giglio that on the evening of September 28, 1978, Borsari sold them two ounces of marijuana for $80. The officers recounted that they entered Ye Old Barn, a bar in Hempstead, New York, at approxi-

---

1. The latter accusation involved Borsari's alleged failure to respond accurately to a question concerning his record of automobile traffic convictions when completing his application for an Airman Medical Certificate. This omission was later determined inadvertent, and the FAA no longer relies on this incident as a justification for Borsari's termination.

mately 7:30 p.m. and arranged with the barmaid, Patricia Hope, to purchase the marijuana which Hope's "main man Pete" would deliver. Upon their return, they observed Borsari, whom Hope introduced as Pete, hand Hope a brown paper bag containing the marijuana which the officers subsequently purchased from her. Dolan further credited Officer Anderson's testimony that on the night of October 7, 1978, also at Ye Old Barn, he observed Borsari take out a small vial of white powder, sniff some, offer some to Ms. Hope, and comment that the substance was cocaine. Finally, Dolan rejected Borsari's contention that he believed he was pleading guilty to a charge of disorderly conduct on May 9, 1979 in the Nassau County District Court when petitioner in fact had pled guilty and been convicted of unlawful possession of marijuana in violation of N.Y. Penal Law § 221.05 in connection with the September 28, 1978 incident.

Despite finding Borsari guilty of each drug charge, Dolan, on August 5, 1980, ordered him reinstated. Relying on Bombace's testimony and affidavits from Borsari's team supervisors indicating that Borsari was a superb air traffic controller, Dolan determined the FAA had not established a sufficient "nexus" between Borsari's off-duty misconduct and his ability to perform his job. More precisely, she concluded the FAA had failed to demonstrate that Borsari's removal would "promote the efficiency of service" as required by 5 U.S.C. § 7513 or that Borsari's involvement with drugs would "adversely affect [his] performance or the performance of others" as 5 U.S.C. § 2302(b)(10) apparently demands.

On October 23, 1980, the Merit Systems Protection Board, on its own motion, reopened Borsari's case.[2] The Board then held Borsari's case in abeyance pending its decision in *Merritt v. Department of Justice,* MSPB Docket No. PH075209058 (June 8, 1981), the Board's first examination of

the provisions of the Civil Service Reform Act as applied to off-duty misconduct. On August 20, 1981, the MSPB remanded Borsari's case for a second initial determination requesting further consideration of several issues. The Board sought rulings on whether petitioner's off-duty conduct created a presumption of adverse effect on the efficiency of service as defined in *Merritt, supra,* whether petitioner's evidence concerning his superior job performance was sufficient to rebut any such presumption, and whether the evidence on the record supported a finding that Borsari had used or possessed cocaine. The Board also asked for clarification of whether Borsari's off-duty use of marijuana could be inferred from his off-duty possession of the drug, and if so, whether on-duty use could also be inferred.

On September 17 and 24, 1981 evidence was taken by Chief Administrative Law Judge John J. McCarthy. McCarthy, unconvinced by the testimony of FAA experts, Harold M. Ginzburg, M.D. and James A. Inciardi, Ph.D., concerning the likelihood that an individual possessing drugs would also use them, found it impermissible to infer from Borsari's possession and sale of marijuana that petitioner had actually used the drug either on or off duty. The MSPB accepts this conclusion, and it is not at issue here.

McCarthy also determined that Officer Anderson's testimony before presiding official Dolan was insufficient to support a finding that Borsari used or possessed cocaine. The ALJ relied on Borsari's and Hope's denials that the cocaine incident took place, and on the fact that Officer Giglio, present in Ye Old Barn at the time of Borsari's alleged involvement with cocaine, failed to testify to corroborate Anderson's statements. In light of the evidence concerning Borsari's outstanding work record, including testimony before the ALJ by Borsari's former supervisor, Benedict Sliney, the ALJ concluded that an iso-

---

**2.** Borsari mistakenly contends that the MSPB improperly remanded his case for a second initial determination. 5 U.S.C. § 7701(e)(1)(B)

clearly permits the Board to reopen and reconsider cases on its own motion. *See* 5 C.F.R. 1201.116 (1982).

lated incident entailing only possession and sale of marijuana was insufficiently connected to Borsari's job performance to justify his removal. The ALJ, therefore, ordered Borsari reinstated.

The FAA appealed the ALJ's ruling to the full Merit Systems Protection Board which vacated McCarthy's decision. Exercising the deference traditionally afforded to the determinations of presiding officials when questions of credibility are involved, the Board accepted Dolan's finding that Officer Anderson's testimony was sufficient to establish Borsari's possession of cocaine on October 7, 1978.[3] The MSPB then concluded that petitioner's "criminal conviction, viewed in the context of his drug-related misconduct on more than one occasion and the nature of his federal employment, permits a presumption that his reinstatement would impair the efficiency of service." The Board further found Borsari's evidence concerning his superior work record "not germane in determining whether the agency can rely on [petitioner's] judgment in the future," and therefore insufficient to rebut the presumption of nexus. Accordingly, the Board affirmed the FAA's decision to discharge him. Pursuant to 5 U.S.C. § 7703, Borsari petitions this court for review of the Board's order.

## II

Confronted with the task of reviewing agency action dismissing an employee as a result of off-duty misconduct, courts face a difficult dilemma. On one hand, a smooth functioning government requires that public officials be afforded broad discretion to make employment decisions based on their view of the agency's best interest. At the same time, the judiciary must defend federal employees against arbitrary dismissal. Recognizing this fundamental tension "between protections established to insure [sic] that employees are hired and fired solely on the basis of their ability, and the need of

managers and policymakers to have flexibility to perform their jobs," S.Rep. No. 969, 95th Cong.2d Sess. 4, *reprinted in* [1978] U.S.Code Cong. & Ad.News, 2723, 2726 (1978), Congress set forth specific guidelines enumerating both the criteria by which federal employment actions are to be evaluated and the standard of judicial review. The Civil Service Reform Act of 1978, and specifically 5 U.S.C. § 7703(c)(3), strengthens employee safeguards and requires courts to set aside actions of the Merit Systems Protection Board "unsupported by substantial evidence."[4] We are also called upon to determine whether an action of the Board is "in accordance with law," 5 U.S.C. § 7703(c)(1), which in this case entails deciding whether Borsari's dismissal was shown to "promote the efficiency of the service" as required by 5 U.S.C. § 7513(a) and not to "discriminate [against him] on the basis of conduct which does not adversely affect [his] performance or the performance of others," 5 U.S.C. § 2302(b)(10). We will consider these questions seriatim.

## A

We need pause only briefly to determine that substantial evidence supports the Board's decision finding Borsari guilty of each of the three drug charges. Petitioner's conviction for unlawful possession of marijuana, N.Y. Penal Law § 221.05 (McKinney 1980), is a matter of public record which, in presiding official Dolan's view, was not refuted by Borsari's incredible claim that he was unaware of the charge to which he pled guilty. Similarly, the presiding official found the testimony of Officers Anderson and Giglio conclusive proof that Borsari sold them $80 worth of marijuana. This testimony clearly constitutes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28

---

3. Neither the Board nor the FAA now relies on allegations that Borsari used cocaine.

4. Prior to enactment of 5 U.S.C. § 7703(c)(3), this court reviewed disciplinary action against

government employees "to guard against arbitrary or capricious action." *McTiernan v. Gronouski,* 337 F.2d 31 (2d Cir.1964).

L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938)) (defining substantial evidence on the record); *see also Hoska v. United States Department of the Army,* 677 F.2d 131 (D.C.Cir.1982) (applying this definition to 5 U.S.C. § 7703(c)(3)).

Although somewhat less convincing, the FAA's position that petitioner possessed cocaine is also supported by substantial evidence and was properly upheld by the Board. Officer Anderson testified that on October 7, 1978, he saw Borsari display a small glass vial, remove a white powder, comment that the substance was cocaine, and inhale some.[5] Presiding official Dolan heard this testimony and found it credible, and disbelieved Borsari's and Hope's denials. Given the presiding official's ability to observe the witnesses' demeanor, her credibility determinations deserve great weight, and are particularly more reliable than the contrary decision of the ALJ who reviewed the same paper record as the Board. Moreover, Officer Anderson's failure to describe Borsari's actual use of cocaine in a written report concerning the incident, and Officer Giglio's failure to testify concerning the events, cannot wholly refute the testimony of the only witness deemed credible by the presiding official. The Board's decision to sustain the Agency's charge of possession of cocaine, based on the record as a whole, is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales, supra.* Accordingly, we find the MSPB properly found Borsari guilty of two drug-related violations within a ten-day period in 1978.

### B

The remaining question is whether the MSPB correctly found Borsari's involvement with drugs sufficiently related to his duties as an air traffic controller to justify his removal. 5 U.S.C. § 7513 makes clear that dismissal is proper only if it can be shown "to promote the efficiency of the service." Although petitioner correctly points to the considerable evidence indicating his superior job performance, we are not convinced this is the only relevant factor. Rather, we are persuaded by the FAA's simple but seemingly uncontrovertible reliance on the incompatibility of drugs with successful air traffic control.

■ The phrase "promote the efficiency of service" cannot be so limited as to require the Agency to wait for an on-the-job violation before dismissing an offending employee. Indeed, it has repeatedly been held that where an employee's misconduct is in conflict with the mission of the agency, dismissal without proof of a direct effect on the individual's job performance is permissible under the "efficiency of the service" standard. In *Masino v. United States,* 589 F.2d 1048 (Ct.Cl.1978), for example, the court upheld the discharge of a customs officer following his off-duty use of marijuana, one of the substances he was assigned to exclude from the country. *See also Giles v. United States,* 553 F.2d 647 (Ct.Cl.1977) (IRS agent dismissed for failing to file timely tax returns); *Wroblaski v. Hampton,* 528 F.2d 852 (7th Cir.1976) (Immigration and Naturalization Service employee removed for employing illegal aliens in his home). While the contradiction between petitioner's involvement with drugs and the goals of the FAA is of a somewhat different nature, the inherent dangers of Borsari's conduct are no less significant.

Air traffic controllers are responsible for the lives and safety of thousands of people. The position entails awesome pressures and requires split-second decisions. Few, if any, positions demand more alertness of mind and soundness of judgment and the stresses and strains on the controller are incalcula-

---

5. Borsari challenges the Board's conclusion that the powdery substance was cocaine, claiming New York law requires extrinsic evidence, such as laboratory testing, identifying an illicit drug before a criminal conviction may be obtained. *See People v. Kenny,* 30 N.Y.2d 154, 331 N.Y.S.2d 392, 282 N.E.2d 295 (1972). We note federal law is to the contrary. *United States v. Agueci,* 310 F.2d 817 (2d Cir.1962), *cert. denied,* 372 U.S. 959, 83 S.Ct. 1016, 10 L.Ed.2d 12 (1963). In any event, we are not reviewing a criminal conviction.

ble. Moreover, the confidence of the flying public depends upon absolute trust in the integrity of the air system. For these reasons, it is clear that any connection with illegal mind-altering substances is anathema to proper control over air traffic. As pilot Eugene Conway testified, "Drugs are just a taboo ... and our responsibilities to the public in just keeping a high confidence level, not to mention the high safety level, would make dealing with drugs just totally unthinkable." Courts considering the relationship between air traffic control and drugs have reached similar conclusions. *See McDowell v. Goldschmidt*, 498 F.Supp. 598 (D.Conn.1980) (upholding dismissal of air traffic controller based on conviction of possession of marijuana and three instances of being absent without leave); *Dew v. Halaby*, 317 F.2d 582 (D.C.Cir.1963), *cert. denied*, 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 550 (1964) (affirming dismissal of air traffic controller based on pre-employment conduct including homosexual activity and smoking of marijuana).

■ Petitioner attacks the Board's finding, claiming there was no evidence he ever actually used drugs either on the job or off-duty. While the use of drugs would certainly constitute more egregious conduct, it need not be established to demonstrate that the decision to dismiss Borsari, based on his sale and possession of illicit substances, was within the Agency's discretion and properly upheld by the Board.

Although it may be true that an individual who has sold or possessed drugs is no more likely to have used them, it is reasonable to infer that as a group, individuals possessing drugs are more likely to employ them. Indeed, the class of drug users must, in the nature of the act, be composed entirely of those who have possessed illicit substances. As the ALJ conceded, "to an employer, there is a greater risk that an employee who has once sold marijuana will use it than in the case of one who has never sold marijuana."

In matters concerning air traffic control, however, any additional risk is unwise and unwarranted. The FAA's decision to eliminate the perceived danger was, therefore, well within its discretion. Indeed, the MSPB's ruling upholding the FAA's action on the basis of Borsari's breach of his co-workers' trust is persuasive precisely because suspicion engendered by Borsari's misconduct would be entirely legitimate. The fact that no employee testified concerning a specific distrust of Borsari cannot diminish the likely impact upon pilots, controllers, and the public at large, possessed of knowledge that an individual dealing in drugs is working in the control tower. Accordingly, we affirm the MSPB's conclusion that the FAA dismissed Borsari to "promote the efficiency of the service."

Borsari's final contention is that the enactment of 5 U.S.C. § 2302(b)(10) as part of the Civil Service Reform Act of 1978 amended the standard for determining when dismissal of a protected federal employee is permissible. The statute provides:

Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority—discriminate for or against any employee or applicant for employment on the basis of conduct which does not adversely affect the performance of the employee or applicant or *the performance of others;* except that nothing in this paragraph shall prohibit an agency from taking into account in determining suitability or fitness any conviction of the employee or applicant for any crime under the laws of any State, of the District of Columbia, or of the United States. (emphasis added) [6]

■ Several factors lead to our conclusion that the Civil Service Reform Act of 1978 was not designed to alter the "efficien-

---

**6.** Petitioner contends the statutory exception for criminal convictions does not apply since he was convicted only of a violation under New York law. *See* N.Y. Penal Law § 221.05 (McKinney 1980). In light of our conclusion that Borsari's misconduct could "adversely affect the performance of others" within the meaning of 5 U.S.C. § 2302(b)(10), we need not consider the precise effect of his conviction.

cy of the service requirement." Most important, the Congress which adopted 5 U.S.C. § 2302(b)(10) simultaneously re-enacted 5 U.S.C. § 7513 containing the "efficiency of the service" standard. Absent clear indication to the contrary, we will not presume Congress meant to render nugatory the language of 5 U.S.C. § 7513. Indeed, it would be anomalous for the legislature to have enacted a stricter standard governing all employment decisions, 5 U.S.C. § 2302(b)(10), than that controlling serious adverse actions such as discharge, 5 U.S.C. § 7513. It is more likely that 5 U.S.C. § 2302(b)(10) was intended to ensure that even less severe sanctions were not discriminatorily imposed.

In addition, the explicit language of 5 U.S.C. § 2302(b)(10) permits employers to punish misconduct which will have an adverse effect on "the performance of others." That language is easily susceptible of the interpretation that Congress expressly permitted removal of employees whose actions might disrupt an agency's smooth functioning by creating suspicion, distrust, or a decline in public confidence. *See Wild v. Department of Housing and Urban Development,* 692 F.2d 1129 at 1132 (7th Cir. 1982). Petitioner does not point to anything in the legislative history suggesting an employer must demonstrate a specific impact on the performance of a particular individual to justify dismissal, nor do we find support for this proposition in the legislative materials. *See, e.g.,* S.Rep. No. 969, 95th Cong., 2nd Sess., *reprinted in* [1978] U.S.Code Cong. & Ad.News, 95th Cong., 2nd Sess. 2723 (1978). Finally, we are not unmindful of the deference to be paid to the views of the Merit Systems Protection Board which, after hearing argument and receiving more than 20 amicus briefs, also concluded that 5 U.S.C. § 2302(b)(10) did not amend the "efficiency of the service" standard. Because we have already determined that the FAA acted within its discretion in discharging Borsari to "promote the efficiency of the service," we affirm the challenged order of the MSPB. The petition for review is denied.