**Gregory SCHMIDT, Plaintiff,**

v.

**REPUBLIC AIRLINES, Defendant.**

Civ. No. 4–85–1429.

United States District Court,
D. Minnesota,
Fourth Division.

April 1, 1986.

---

David W. Larson, Minneapolis, Minn., for plaintiff.

Timothy R. Thorton, Hart & Bruner, P.A., Minneapolis, Minn., for defendant.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

Plaintiff Gregory Schmidt, a former Republic Airlines employee, brought this action against Republic Airlines, seeking confirmation of an arbitration award which ordered Republic to reinstate Schmidt and pay him back wages and benefits. Schmidt also seeks injunctive relief and damages. Republic counterclaimed, seeking an order vacating the arbitration award as contrary to public policy. Plaintiff alleges jurisdiction pursuant to the Railway Labor Act, 45 U.S.C. § 153 First (p) and 28 U.S.C. § 1331.

The matter is now before the court on plaintiff's motion for summary judgment confirming the arbitration order and finding that defendant wrongfully discharged plaintiff.

*Background*

Schmidt was a maintenance supervisor at Republic and was "obviously held in high regard by all of his supervisors." Systems Board of Adjustment Award, dated July 16, 1985 (the "Award"), at 3. He was also a friend or acquaintance of Casey Ramirez, a well-known resident of Princeton, Minnesota, now serving twenty years for cocaine trafficking. Ramirez apparently permitted Schmidt to use his airplanes in return for occasional "errands," typically flying or delivering airplanes within the United States. One of these occasions involved an April 1983 flight to Fort Lauderdale and the Bahamas. In order to take this trip, Schmidt falsely informed Republic that he was too ill to work. Schmidt states that he did not knowingly engage in any criminal activity on that trip or at any other time and that he "discontinued" his relationship with Ramirez after he realized during the trip that Ramirez was involved in drug smuggling.

In June 1983, Schmidt was called before a grand jury to testify about his relationship with Ramirez and the April trip. He apparently answered certain questions, but asserted his Fifth Amendment privilege in response to questions regarding the April trip. Schmidt was subsequently indicted for perjury on the basis of his grand jury testimony, but was acquitted by a jury in May 1984. Schmidt testified at Ramirez's September 1984 trial in exchange for immunity. He "was treated throughout the proceedings as an unindicted co-conspirator." Award at 3.

In October 1984, Republic terminated Schmidt by letter stating that Republic had been concerned about Schmidt's involvement with the grand jury proceedings and his perjury trial and about the adverse publicity it suffered as a result. The letter stated that Schmidt had testified, under oath, that he had falsified his sick leave

report.[1] The letter also charged that Schmidt was implicated, with Ramirez and others, in a conspiracy to smuggle and distribute 400 pounds of cocaine.

Republic fired Schmidt without notice or a hearing. It is uncontested that Republic knew of Schmidt's activities long before this termination. It is also uncontested that Republic's action violated Article IX (E) of Republic's Collective Bargaining Agreement (the "Agreement"), which provides:

> No supervisor covered by this Agreement shall be disciplined prior to a fair and impartial hearing by a designated official of the carrier except that temporary suspension from the service pending the hearing shall not be deemed a violation of this provision.

After his termination, Schmidt repeatedly sought additional information regarding the reasons for his termination. Republic rebuffed these requests and Schmidt's requests for certain documents. Schmidt followed the grievance procedure established by the Agreement and ultimately submitted his grievance to a Systems Board of Adjustment panel (the "Board") consisting of a neutral chair and one member each from Republic and Schmidt's union. He sought reinstatement and back pay and benefits.

The Board found that Schmidt had admitted that he fraudulently claimed sick leave and that Schmidt's own testimony, as well as that of others, "pictured [him] as an accomplice in the drug smuggling conspiracy to the extent that he served Ramirez as an expert mechanic and pilot in furtherance of operations which would have appeared highly suspect to a person of ordinary prudence." The Board nonetheless sustained the grievance because Republic had failed to provide the limited due process required by the Agreement. Republic's member of the Board dissented, finding reinstatement unnecessary in light of the magnitude of the offense.

*Discussion*

"Judicial review of an arbitrator's award is extremely limited and if the award draws its essence from the Collective Bargaining Agreement, it must be enforced even if the court would have reached a contrary result had it considered the matter in the first instance." *Manhattan Coffee Co. v. International Brotherhood of Teamsters Local 688,* 743 F.2d 621 (8th Cir.1984) (citations omitted). The Railway Labor Act, 45 U.S.C. §§ 151–188 (the Act) provides the district court with only three statutory grounds for setting aside an airline systems board decision: the Board's failure to comply with the Act or to confine itself to matters within its jurisdiction, and the fraud or corruption of a Board member. 45 U.S.C. § 153 First (q); *Ozark Air Lines, Inc. v. Air Line Pilots Assoc. International,* 744 F.2d 1347, 1350 (8th Cir. 1984), *cert. denied,* —— U.S. ——, 106 S.Ct. 232, 88 L.Ed.2d 231. Courts also retain the authority to vacate an arbitration decision if it arises from a dispute not properly subject to arbitration, fails to draw its "essence" from the agreement, or violates well-defined public policy. *See, e.g., Stroh Container Co. v. Delphi Industries, Inc.,* 783 F.2d 743, 749–750 (8th Cir.1986) (citations omitted).

Republic argues that the arbitration award effectively requires the reinstatement of a proven drug trafficker in the airline industry and therefore violates public policy. Although the Board did not expressly find that Schmidt was guilty of drug trafficking, it did indicate that there was substantial evidence that Schmidt was involved "with operations which would have appeared highly suspect to a person of ordinary prudence," and that Schmidt's general "culpability ... was all too evident."

The strong federal policy against the use, sale, and transporting of cocaine is too well known to require discussion here. *See generally* 21 U.S.C. §§ 841–48 and 951–64.

**1.** It is undisputed that Schmidt admitted to this misdeed long before he gave this testimony. Republic states that it had "reacted sympathetically and assured him that he would not lose his job" only because he had not disclosed the illegal aspects of his April 1983 errand.

Congress has recognized the importance of air transportation to the drug trade, and has acted to counter that special problem. The Aviation Drug Trafficking Control Act, 49 U.S.C. § 1429(c), directs the Federal Aviation Administration (FAA) to revoke the "airman certificate" of any person convicted of or determined to be knowingly engaged in a felony drug offense, other than simple possession, in which an aircraft was used.[2]

The strong public policy against drug trafficking is not, however, the only policy at issue in this case. Public policy favors not only the enforcement of arbitration awards, but also of collective bargaining agreements which are the product of negotiations between employers and unions representing employees. *See, e.g., United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Republic and the Union to which Schmidt belongs entered into a collective bargaining agreement which provides specific procedures for terminating employees and also provides for binding arbitration of labor disputes. The Agreement expressly provides that a hearing must occur before any discipline other than a temporary suspension pending such a hearing. Article IX(E). Republic could have bargained for an exception to this rule

for drug-related cases, but the Agreement has no such exception. Moreover, Republic could have temporarily suspended Schmidt in conformance with Article IX if it wished to take immediate action at any point. Republic has offered no justification for its failure to comply with the terms of the Agreement and follow this procedure.

The scope of judicial review in Railway Labor Act arbitration cases is "among the narrowest known to law," *Diamond v. Terminal Railway Alabama State Docks,* 421 F.2d 228, 233 (5th Cir.1970). A court must exercise extreme caution in declaring an arbitration award violative of public policy. *E.g., W.R. Grace & Co. v. Local 759, International Union of Rubber Workers,* 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983). Republic states that the only issues in this case are back pay and the effect on its reputation of being required to reinstate Schmidt "for even one day." If it is required to reinstate Schmidt, Republic will simply seek to terminate him again in accordance with the Agreement. It does not argue that a refusal to vacate the Award would mean the airline must continue to employ a known drug trafficker. On this record, Republic has simply not made a showing sufficient to satisfy its heavy burden in seeking to vacate an arbitration order.[3]

---

2. It does not appear that the FAA has suspended Schmidt's airman certificate, and, in fact, plaintiff's counsel states that Schmidt retains his certificate.

3. The authority on which Republic relies is not to the contrary. *United States Postal Service v. American Postal Workers Union,* 736 F.2d 822 (1st Cir.1984); *Borsari v. Federal Aviation Administration,* 699 F.2d 106 (2d Cir.), *cert. denied,* 464 U.S. 833, 104 S.Ct. 115, 78 L.Ed.2d 115 (1983); *Masino v. United States,* 218 Cl.Ct. 531, 589 F.2d 1048 (1978); *Giles v. United States,* 213 Cl.Ct. 602, 553 F.2d 647 (1977); and *Wroblaski v. Hampton,* 528 F.2d 852 (7th Cir.1976), are all Civil Service cases involving markedly different standards of review. In all of those cases, the court's authority to review the decisions below was far broader than it is here. *Borsari, Wroblaski,* and *Masino* also affirmed the determinations of the Civil Service authorities. The three other cases involved drug or alcohol users whose behavior created immediate dangers to public safety. In *Amalgamated Meat Cutters v.*

*Great Western Food Co.,* 712 F.2d 122 (5th Cir. 1983), the employee was a truck driver who admitted that he had been drinking on duty shortly before his eighteen-wheel rig overturned. The airline co-pilot in *Northwest Airlines v. Air Line Pilots Association International,* 633 F.Supp. 779 (D.D.C.1985), had consumed a substantial amount of alcohol before flight duty; his alcohol blood level was .13%. The arbitration award also dealt with violations of other Northwest rules and regulations not strictly subject to the collective bargaining agreement. In *Misco, Inc. v. United Paperworkers International Union,* 768 F.2d 739 (5th Cir.1985), the employee, an operator of an unusually dangerous machine, had been twice reprimanded for "shoddy, inattentive work" and was discovered, during a work break, sitting in a car with co-workers "with marijuana smoke in the air and a lighted marijuana cigarette in the front-seat ash tray." In none of the cited cases did the employers choose to ignore the procedures established under a collective bargaining agreement.

The Award should be confirmed because defendant has failed to show that enforcement would be contrary to public policy or to identify any unsettled question of material fact requiring a trial. Schmidt has also moved for summary judgment on his claim for wrongful discharge; this claim appears redundant and should therefore be dismissed.

## ORDER

Accordingly, based upon the above and all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that

1. Plaintiff's motion to confirm the July 16, 1985 Award of the System Board of Adjustment is granted.

2. Plaintiff's motion for summary judgment on his claim of wrongful discharge is denied, and the claim is dismissed.