BROTHERHOOD OF MAINTENANCE
OF WAY EMPLOYEES, Plaintiff,

v.

DENVER AND RIO GRANDE WEST-
ERN RAILWAY COMPANY, De-
fendant.

Civil Action No. 95–B–2564.

United States District Court,
D. Colorado.

May 2, 1997.

John Inderwish, Rossi, Cox, Kiker & In-
derwish, P.C., Aurora, William A. Bon, Jr.,
Brotherhood of Maintenance of Way Em-
ployees, Southfield, MI, for Plaintiff.

John R. Webb, Mary Hurley Stuart,
Holme, Roberts & Owen, P.C., Denver,
Wayne M. Bolio, Southern Pacific Transpor-
tation Co., San Francisco, CA, for Defendant.

## MEMORANDUM OPINION & ORDER

BABCOCK, District Judge.

Plaintiff moves for summary judgment on
its petition to enforce an arbitration award of
the National Railroad Adjustment Board,
Third Division (Board). Defendant cross-
moves for summary judgment on its counter-
claim to overturn the award of the Board.
For the following reasons, I will grant plain-
tiff's motion for summary judgment and deny
defendant's motion.

### I.

The following facts are undisputed. Plain-
tiff, the Brotherhood of Maintenance of Way
Employees, is the representative of the class
of maintenance of way employees within the
Denver and Rio Grande Western Railway
Company. John Brainard, a member of the
plaintiff union, was employed by Defendant
as a bridge and building helper. He was
assigned to work with contractor forces in-
side a tunnel near Cliff, Colorado. On Janu-
ary 21, 1992, Brainard was on the job site
seated in a contractor-owned vehicle. The
vehicle was struck from behind by another
contractor-owned vehicle, and Brainard was
injured.

Brainard was accompanied by an officer of defendant to a health clinic, where he was required to provide blood and urine samples. Defendant asserts that tests detected marijuana in Brainard's blood and urine samples. Brainard was then dismissed, and he appealed his dismissal via his union representative. After Brainard's appeals were denied at each step required by the collective bargaining agreement between plaintiff and defendant, he appealed to the Board.

In making its decision, the Board refused to consider a 1988 violation of the defendant's drug policy by Brainard because defendant did not present that evidence during the "on property" hearing below. The Board cited 29 C.F.R. § 301.5, which precludes consideration by the Board of evidence not presented below because the Board is an appellate tribunal.

Based on the record before it, the Board held that defendant lacked reasonable suspicion or cause to require Brainard to provide samples for a drug screen:

> FRA regulatories provide for a good faith determination based upon reasonable inquiry by the carrier representative responding to the accident scene (FRA Regulations § 219.201(c)). The record, however, contains no evidence as to the basis for carrier's representative's decision to test the claimant. The only evidence in the record shows that claimant had the misfortune of being in the wrong place at the wrong time. Mere presence at an accident scene does not establish a reasonable basis for requiring an employee to submit to a drug screen.

Therefore, the Board ordered that Brainard be reinstated and made whole for wages and benefits lost as a result of the dismissal. His reinstatement, however, was conditioned on passing a drug screen, participation in an employee assistance program, and random follow-up tests as provided in the defendant's drug testing and rehabilitation program.

Defendant has refused to comply with the Board's decision. Plaintiff petitioned this court to enforce the Board's award pursuant to 45 U.S.C. § 153(p), (q). Defendant counterclaims to overturn to Board's award. Each party moves for summary judgment.

## II.

The very purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.,* 45 F.3d 357, 360 (10th Cir.1995). Fed.R.Civ.P. 56 provides that summary judgment shall be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). If a reasonable juror could not return a verdict for the nonmoving party, summary judgment is proper and there is no need for a trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

## III.

Defendant argues that I should overturn the decision of the Board because it would violate public policy to reinstate a railroad employee who is known to use illegal drugs. Plaintiff argues that there is no public policy exception to the jurisdictional limits of this court in reviewing awards of the Board, and even if such a public policy exception did exist, the Board's decision should be upheld. I agree with plaintiff, and I will, therefore, grant plaintiff's motion for summary judgment and deny defendant's motion.

Section 3 of the Railway Labor Act (RLA), 45 U.S.C. § 153, provides for the establishment and operation of the Board. When, as here, the carrier fails to comply with the Board's order, 45 U.S.C. § 153(p) provides an enforcement mechanism:

> If a carrier does not comply with an order of a division of the Adjustment Board within the time limit in such order, the petitioner, or any person for whose benefit such order was made, may file in the District Court of the United States for the district in which he resides ... a petition setting forth briefly the causes for which he claims relief, and the order of the division of the Adjustment Board.... Such suit in the District Court of the United States shall proceed in all respects as other civil suits, except that on the trial of such suit the findings and order of the division of the Adjustment Board shall be

conclusive on the parties.... The district courts are empowered, under the rules of the court governing actions at law, to make such order and enter such judgment, by writ of mandamus or otherwise, as may be appropriate to enforce or set aside the order of the division of the Adjustment Board: *Provided, however,* That such order may not be set aside except for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order.

(emphasis in original). Therefore, although technically plaintiff has filed a petition to enforce the award of the Board, which constitutes a new lawsuit, my jurisdiction is limited similar to that of an appellate court. Nevertheless, because § 153(p) requires that this suit proceed "in all respects as other civil suits," Rule 56 is applicable here. *Cf. Olenhouse v. Commodity Credit Corp.,* 42 F.3d 1560, 1579 & n. 31 (10th Cir.1994).

Defendant does not dispute that the Board had jurisdiction to hear plaintiff's appeal or that it complied with the relevant provisions of the RLA. Nor has defendant raised any question regarding corruption or fraud. Rather, defendant argues that a district court has the power to set aside an arbitrator's order if the award would run contrary to public policy. Here, defendant contends that reinstating Brainard would be contrary to public policy because he has twice tested positive for illegal drugs, he works in a safety-sensitive position, and reinstating him could compromise public safety.

I conclude, however, that I am not permitted to consider public policy concerns in reviewing an order by the Board under the RLA. Further, even if the public policy exception proposed by defendant applies in this context, I conclude that it is a narrow exception that would not require overturning the Board's order here.

A. *Public Policy Review Under the RLA*

■ Congress has provided specific limits on the scope of district courts' review of Board decisions. 45 U.S.C. § 153(p), (q). In

*Union Pacific R.R. Co. v. Sheehan,* 439 U.S. 89, 99 S.Ct. 399, 58 L.Ed.2d 354 (1978), the Supreme Court overturned a Tenth Circuit decision as being outside the scope of review provided in § 153. Sheehan had filed a breach of contract suit in state court arising out of his discharge. When Sheehan later filed his arbitration claim with the Board, the Board dismissed it as untimely, rejecting Sheehan's argument that the time limit should have been equitably tolled. The district court upheld the Board's order, but the Tenth Circuit reversed. The Tenth Circuit stated that the Board's order denied Sheehan due process, and because his appeal involved a legal, as opposed to factual, determination, the court was permitted a broader scope of review than provided in § 153.

The Supreme Court reversed and reinstated the Board's order. The Court stated:

> Judicial review of Adjustment Board orders is limited to three specific grounds: (1) failure of the Adjustment Board to comply with the requirements of the Railway Labor Act; (2) failure of the Adjustment Board to conform, or confine, itself to matters within the scope of its jurisdiction; and (3) fraud or corruption. Only upon one or more of these bases may a court set aside an order of the Adjustment Board.

*Id.* at 92, 99 S.Ct. at 402 (internal citations omitted). The Court reasoned that nothing in the statute provides for a broader scope of review when the issues are purely legal: "We have time and again emphasized that this statutory language means what it says." *Id.* at 93, 99 S.Ct. at 402.

In particular, the Court was concerned with honoring the strictures set forth by Congress:

> A contrary conclusion would ignore the terms, purposes and legislative history of the Railway Labor Act. In enacting this legislation, Congress endeavored to promote stability in labor-management relations in this important national industry by providing effective and efficient remedies for the resolution of railroad-employee disputes.... Congress considered it essential to keep these so-called "minor" disputes within the Adjustment Board and

out of the courts. The effectiveness of the Adjustment Board in fulfilling its task depends on the finality of its determinations. *Id.* at 94, 99 S.Ct. at 402 (internal citations omitted).

Defendant argues that *Sheehan* is inapposite because the Court was not confronted with the question of whether the scope of review should be expanded where public policy demands it. Indeed, several courts have accepted with little or no discussion the idea that arbitration awards rendered under the RLA are subject to public policy review. *See Delta Air Lines v. Air Line Pilots Ass'n, Int'l*, 861 F.2d 665, 674 (11th Cir.1988), *cert. denied*, 493 U.S. 871, 110 S.Ct. 201, 107 L.Ed.2d 154 (1989); *Northwest Airlines v. Air Line Pilots Ass'n, Int'l*, 808 F.2d 76, 83–84 (D.C.Cir.1987), *cert. denied*, 486 U.S. 1014, 108 S.Ct. 1751, 100 L.Ed.2d 213 (1988); *In re: Pan American Corp.*, 140 B.R. 336, 341 (S.D.N.Y.1992); *Schmidt v. Republic Airlines*, 630 F.Supp. 1303, 1305 (D.Minn.1986). The only significant discussion of the issue, however, appears in *Union Pacific R.R. Co. v. United Transp. Union*, 3 F.3d 255 (8th Cir.1993), *cert. denied*, 510 U.S. 1072, 114 S.Ct. 881, 127 L.Ed.2d 76 (1994), where the Eighth Circuit held specifically that, in spite of the Court's language in *Sheehan*, the scope of review under the RLA may be expanded by a public policy exception.

In *Union Pacific*, the court limited *Sheehan* to its facts and refused to extend it to preclude public policy review of an arbitration award under the RLA. 3 F.3d at 259. The court reasoned that "federal courts have consistently held that they may not enforce contracts that violate public policy." *Id.* Because the plaintiff was essentially seeking to enforce a contract (i.e., the collective bargaining agreement), the court stated that the usual rule permitting public policy review applied. In support, the court cited to Supreme Court cases applying public policy review to arbitration awards under the National Labor Relations Act (NLRA). *Id.* (citing *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 42, 108 S.Ct. 364, 373, 98 L.Ed.2d 286 (1987); *W.R. Grace and Co. v. Local Union 759*, 461 U.S. 757, 766, 103 S.Ct. 2177, 2183–84, 76 L.Ed.2d 298 (1983)).

In *Misco*, for example, the Court stated that a reviewing court may overturn an arbitrator's order if it violates an "explicit public policy that is well defined and dominant and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." 484 U.S. at 43, 108 S.Ct. at 373 (internal quotations omitted). The public policy review of an arbitrator's award in interpreting a collective bargaining agreement "is a specific application of the more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy." *Id.* at 42, 108 S.Ct. at 373. I am not persuaded, however, that *Misco* and the other cases cited in *Union Pacific*, which were decided under the NLRA, permit public policy review of arbitration awards under the RLA.

The RLA is specific. A reviewing court is confined to review a Board order under the three narrow criteria set forth in 45 U.S.C. § 153(p). In *Sheehan*, the Supreme Court indicated that the scope of review provided by the statute is to be strictly followed. By contrast, the NLRA contains no provision specifically constraining the scope of review by the district court. *See* 29 U.S.C. § 173. It is not surprising, then, that the Court would apply the traditional common law principle of public policy review to an arbitrator's award under the NLRA. However, it is another matter, entirely, to apply a common-law, judicially-created doctrine in the face of specific statutory language to the contrary.

I conclude, therefore, that *Misco* and other cases not decided under the RLA are inapposite, and I must adhere to the limited scope of review delineated by Congress in § 153(p), (q) and reiterated by the Court in *Sheehan*. Defendant does not challenge the Board order under any of the three prongs set forth in the statute. Accordingly, I will grant plaintiff's motion for summary judgment and deny defendant's motion.

### B. *Application of Public Policy Review*

■ Even if public policy review of the Board's decision is permissible here, defendant has failed to make the clear showing necessary to overturn the Board's order. In

*Misco,* the Court marked the limits of public policy review. The Court stated:

> [A] court's refusal to enforce an arbitrator's interpretation of [a collective bargaining agreement] is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public policy.

*Misco, supra* at 43, 108 S.Ct. at 373–74 (internal quotations omitted). The Court also stated that its previous decision in *W.R. Grace, supra,* did not

> sanction a broad judicial power to set aside arbitration awards as against public policy. Although we discussed the effect of that award on two broad areas of public policy, our decision turned on our examination of whether the award created any explicit conflict with other laws and legal precedents rather than an assessment of general considerations of supposed public interests. At the very least, . . . the violation of [a public] policy must be clearly shown if an award is not to be enforced.

*Misco, supra* at 43, 108 S.Ct. at 373–74 (internal quotations and citations omitted).

Assuming, then, that public policy review would be appropriate in this case, the question becomes whether defendant's objections to the Board's decision rest on "laws and legal precedents" or "general considerations of supposed public interests." Although it is eminently reasonable to assume that public policy is violated by reinstating a railroad employee to an arguably safety-sensitive position when he has twice tested positive for illegal drugs, *Misco* is more demanding. The facts of that case are instructive.

In *Misco,* an employee named Cooper, who ran a dangerous machine in a papermill, was found by police in the back of a third-party's car on company property with marijuana smoke filling the car and a lit marijuana cigarette still smoldering in the front ashtray. 484 U.S. at 33, 108 S.Ct. at 373. The police also searched Cooper's car and found a plastic scales case and marijuana gleanings. Cooper was discharged for violation of a company rule against having drugs on the premises. Cooper filed a grievance and, pursuant to the collective bargaining agreement, the matter proceeded to arbitration.

The arbitrator held that Misco did not have just cause to discharge Cooper because finding Cooper in a third party's car with a burning marijuana cigarette and smoke in the car was insufficient proof that Cooper possessed or used drugs on company property. Pursuant to a procedural rule, the arbitrator refused to consider the evidence of marijuana in Cooper's car because that fact was not known to Misco at the time it discharged Cooper. The arbitrator ordered that Cooper be reinstated to his previous position. Misco appealed to the United States District Court, arguing that reinstatement would run counter to public policy due to the dangerous nature of Cooper's work. The district court agreed and overturned the arbitrator's order. The court of appeals affirmed.

The Supreme Court reversed because Misco did not clearly show a violation of public policy that was derived from "laws and legal precedents." 484 U.S. at 44, 108 S.Ct. at 374. Rather, the court stated that although the lower courts' assumption that reinstating an drug-using employee to a dangerous job contravenes public policy "is firmly rooted in common sense, we explicitly held in *W.R. Grace* that a formulation of public policy based only upon general considerations of supposed public interests is not the sort that permits a court to set aside an arbitration award." *Id.* (internal quotations omitted). The lower courts had made no attempt to review existing laws to demonstrate that they establish a "well defined and dominant" policy against the operation of dangerous machinery while under the influence of drugs. Further, the Court stated that the lower courts erred in considering the evidence of marijuana in Cooper's car, which had been properly excluded by the arbitrator, and in substituting its own findings of fact for those of the arbitrator. *Id.*

Here, defendant has pointed to no law or legal precedent to demonstrate that reinstating Brainard would violate a "well defined and dominant" public policy. Unlike in *Un-*

*ion Pacific,* where federal regulations prohibited the employee from unconditionally returning to his previous position, defendant can point to no federal law or regulation directly applicable to Brainard. *See* 3 F.3d at 261–62. Specifically, all of the regulations relied upon by the court in *Union Pacific* apply to "covered employees"—mainly conductors, locomotive engineers, etc. Brainard was a maintenance of way employee, and it is undisputed that he is not a covered employee.

Instead, defendant relies on its own "Rule G," which is an industry-wide rule prohibiting the use of illegal drugs or alcohol by employees in what defendant defines as "safety-sensitive" positions. Defendant contends that Brainard's position is "safety-sensitive." In addition, defendant argues that the Board should have considered Brainard's 1988 violation of its drug-use rules in drafting its order.

I am unpersuaded. First, the Court in *Misco* rejected Misco's argument based solely on common sense and an internal rule against possession of drugs on company property. Accordingly, absent some reference to "laws" or "legal precedent" to establish a public policy violation, I cannot overturn the order of the Board. Although I have no doubt that defendant's public policy argument against reinstating Brainard is as "firmly rooted in common sense" as Misco's, the Court has stated that such an argument is simply not enough to overturn an arbitration award.

■ In addition, the Court in *Misco* stated that the lower courts erred when they considered evidence that was excluded by the arbitrator due to the application of a procedural rule. Therefore, I may not consider the evidence of Brainard's alleged 1988 violation of Rule G because the Board excluded it pursuant to application of a procedural rule. See 29 C.F.R. § 301.

In sum, even if public policy review would be permissible in this case, defendant has not shown a clear violation of a well defined and dominant public policy by reference to laws and legal precedents, and I cannot, therefore, disturb the Board's order.

Accordingly, it is ORDERED that:

1. Plaintiff's motion for summary judgment is GRANTED, and judgment shall enter that defendant comply with the Board's order;

2. Defendant's motion for summary judgment is DENIED, and its counterclaim is DISMISSED;

3. Plaintiff is awarded its costs.