**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LOCAL 443, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Respondent.**

**No. 878, Docket 78–4195.**

United States Court of Appeals, Second Circuit.

Argued April 30, 1979.

Decided June 6, 1979.

John D. Burgoyne, Washington, D. C. (John S. Irving, John E. Higgins, Jr., Rob-

**412**

ert E. Allen, and Elliott Moore, National Labor Relations Board, Washington, D. C., of counsel), for petitioner.

Norman Zolot, Hamden, Conn. (Burton S. Rosenberg, Hamden, Conn., of counsel), for respondent.

Before LUMBARD, FRIENDLY and MULLIGAN, Circuit Judges.

MULLIGAN, Circuit Judge:

The National Labor Relations Board (the Board) petitions for enforcement of its decision and order of May 3, 1978, issued against Local 443, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (the Union).[1] The Board adopted the findings and conclusions of the Administrative Law Judge (ALJ) who ruled that the superseniority clause in the collective bargaining agreement (CBA or contract) maintained between the Union and the Connecticut Limousine Service, Inc. (the Company) according Union stewards superseniority with respect to terms and conditions of employment other than layoff and recall violated sections 8(b)(1)(A) and (b)(2) of the National Labor Relations Act (the Act), 29 U.S.C. § 158(b)(1)(A), (b)(2).[2]

The Union contends on this appeal that the mere maintenance of such a superseniority clause without any showing of actual resort to the provision by the Union stewards is not violative of the Act. The Union further urges that since it presented a legitimate and substantial business justification for granting stewards superseniority respecting shift selection the Board erred in failing to approve such a clause relating to that condition of employment. We reject the first argument of the Union but find merit in the second. Accordingly, we enforce the decision and order as modified hereinafter.

The Company furnishes limousine service from New Haven and other cities in Connecticut to Kennedy and LaGuardia airports in New York City. The Union represents the Company's 23 full-time and 105 part-time drivers. The CBA between the Company and the Union provided for separate seniority lists for full-time and part-time drivers but stated that the Union-designated stewards "shall be granted superseniority *for all purposes. . . .*" (emphasis added). Other provisions in the agreement stated that seniority was controlling as to numerous benefits afforded by the contract. In addition to rights of layoff and recall these included preference concerning overtime or weekend work, choice of vacation periods, assignment to higher pay classification, bidding for particular trips (shift selection), selection as an extra driver and "punching out" in the event excess drivers were available.

The evidence presented by the Union in the hearing before the ALJ established without contradiction that no steward in the Company's employ had ever exercised his superseniority rights to obtain any of the enumerated contractual benefits. However no testimony was introduced which warranted the present applicability of the clause to a whole spectrum of contractual benefits.

In *NLRB v. Milk Drivers' & Employees, Local 338*, 531 F.2d 1162 (2d Cir. 1976) (*Dairylea*) we upheld the position of the Board that a clause in a CBA granting superseniority to union stewards over all other employees for all purposes is presumptively violative of the Act. Section 8(b)(2) of the Act was designed to promote industrial harmony by enabling employees "to freely exercise their right to join unions, be good, bad, or indifferent members, or abstain from joining any union without imperiling their livelihood." *Radio Officers' Union v. NLRB*, 347 U.S. 17, 39–42, 74 S.Ct.

---

1. The Board's decision and order, reported at 235 NLRB No. 186, was issued by a three member panel (Members Jenkins and Penello, with Chairman Fanning dissenting).

2. In the same proceeding the Board issued an order against the Company for a violation of section 8(a)(3) of the Act, 29 U.S.C. § 158(a)(3). In view of the Company's agreement to comply voluntarily with the Board's order, enforcement has not been sought against that party.

323, 335, 98 L.Ed. 455 (1954); *Dairylea, supra,* 531 F.2d at 1163. A clause granting superseniority as to terms and conditions beyond layoff and recall is presumptively illegal because it has the serious potential for encouraging employees to be "good" union members so that they might be designated stewards and reap the attendant contractual benefits. Id. at 1166.[3]

The mischief of a broad superseniority clause persists whether or not a particular steward chooses to invoke its benefits.[4] Cf. *NLRB v. Sightseeing Guides and Lecturers Union, Local 20076,* 310 F.2d 40, 41 (2d Cir. 1962); *NLRB v. Gottfried Baking Co.,* 210 F.2d 772, 779–80 (2d Cir. 1954). It presents an inducement (which we condemned in *Dairylea*) for the employee to become a good or enthusiastic union member which is violative of Section 8(b)(2).[5]

▪▪▪ Notwithstanding the above, we think the Board erred in refusing to acknowledge the Union's showing of a justification for superseniority at least as to shift selection. As we observed in *Dairylea,* the presumption of illegality against a superseniority clause can be rebutted if the Union advances evidence demonstrating "legitimate and substantial business justifications" for the provision. 531 F.2d at 1163, quoting *NLRB v. Great Dane Trailers,* 388 U.S. 26, 34, 87 S.Ct. 1792, 18 L.Ed.2d 1027 (1967). Since our decision in *Dairylea* the Board has recognized that a superseniority clause regarding shift selection is justified where circumstances are such that the provision will assure a steward greater accessibility to his co-workers and thus genuinely assist him to perform a role which will redound to the benefit of all employees. *UAW, Local 1331,* 228 N.L.R.B. 1446, 95 L.R.R.M. 1071 (1977); see *IATSE, Local 780,* 227 N.L.R.B. 558, 94 L.R.R.M. 1230 (1976). The evidence proffered by the Union at the hearing below demonstrated the necessity for a Company driver to bid successfully for early morning trips in order to maximize contact with other Company employees.[6] Despite this showing the Board declined to comment on the propriety of the inclusion in the CBA of a superseniority provision limited to shift preference as well as layoff and recall. The order entered and the notices posted permit maintenance of a superseniority clause only as to layoff and recall. In view of the Union's demonstration of a legitimate justification for superseniority as to shift selection we believe that continued maintenance of such a clause governing that condition of employment would assist rather than impede the exercise of the employees' rights under the Act. We therefore enforce the Board's order as set forth below with the addition of the underscored language. The Union:

---

**3.** The General Counsel has not challenged superseniority for purposes of layoff and recall because those preferences work in a narrow and predictable manner and ensure continuous Union representation by the same steward—a goal obviously in the best interest of all the employees. See *Dairylea, supra,* 531 F.2d at 1166 n. 7.

**4.** To the extent that *NLRB v. Auto Warehousers, Inc.,* 571 F.2d 860, 863 (5th Cir. 1978) may be read to suggest that the maintenance of a superseniority provision unsupported by a present adequate business justification does not constitute a violation of the Act, we decline to follow the reasoning of that case.

**5.** Like the court in *Dairylea* we need not consider the Board's finding of a section 8(b)(1)(A) violation since we sustain the conclusion that the superseniority provision violated section 8(b)(2). 531 F.2d at 1165 n. 3. Section 8(b)(2) prohibits a union from causing or attempting to cause an employer to violate section 8(a)(3). That section in turn makes it an unfair labor practice for an employer by discrimination in regard to any term or condition of employment "to encourage or discourage membership in any labor organization."

**6.** The Company's busiest hours are from 5:30 A.M. to 2:00 P.M. There was evidence that Steward Dacey drives a 6:00 A.M. trip after which he remains at the airport and is available to some 50 or 60 company drivers. A part-time steward, Williams, testified that although he does not punch in until 5:30 A.M. he arrives at work about 4:45 A.M. and because of that schedule is available to some 80% of the part-time drivers working on any one day. Both stewards affirmed that their assured ability to choose early airport runs helped them to perform their duties as set forth in the CBA. (The collateral benefits of early rising have long since been proclaimed by others pursuing somewhat different vocations but we express no opinion on this proposition.)

. . . shall cease and desist from maintaining the collective bargaining provisions 'with [the Company] which accord union stewards superseniority with respect to terms and conditions of employment other than layoff and recall [and provisions for shift preferences].

The notices posted shall also be conformed appropriately.

Enforced as modified.