**PERMA–LINE CORPORATION OF AMERICA, Appellant,**

v.

**SIGN PICTORIAL AND DISPLAY UNION, LOCAL 230, INTERNATIONAL BROTHERHOOD OF PAINTERS AND ALLIED TRADES, AFL–CIO, Appellee.**

**No. 124, Docket 80–7416.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 27, 1980.
Decided Jan. 23, 1981.

## FACTS

The collective bargaining agreement between Perma-Line and the union, Sign Pictorial and Display Union, Local 230, International Brotherhood of Painters and Allied Trades, provides in Article II, Section 2:

> All hiring, layoffs, and discharges of employees, *except discharges for cause*, shall be made in accordance with the provisions of this agreement. (Emphasis added.)

The agreement also provides, in Article V, Section 2:

> Grievances and disputes involving any employee and/or a steward, shall be taken up for adjustment by the Union and a representative of the Employer. No steward shall be laid off or discharged without the consent of the Union.

Work Rule 11, promulgated by Perma-Line, provides for summary discharge of the "aggressor" in a fight.[1] It is the interrelationship among these three provisions that underlies this dispute.

Roger H. Briton, New York City (Fred C. Klein, Richard J. Reibstein, Seham, Klein & Zelman, New York City, of counsel), for appellant.

Seymour M. Waldman, New York City (Martin Markson, Waldman & Waldman, New York City, of counsel), for appellee.

Before MULLIGAN and OAKES, Circuit Judges, and METZNER, District Judge.*

OAKES, Circuit Judge:

Perma-Line Corporation of America seeks to overturn an arbitration award reinstating, without back pay, a union shop steward discharged for fighting on the job. The arbitrator, asked to determine whether the shop steward had been discharged for cause, held that he could not be discharged at all, under a provision in the collective bargaining agreement requiring union consent to layoff or discharge of stewards. This appeal is from a summary judgment of the United States District Court for the Southern District of New York, John M. Cannella, Judge, confirming the arbitration award. We reverse and remand.

On August 6, 1979, a Perma-Line employee, Generoso Barbieri, who had been working nights, complained to his shop steward after he was informed that his assignment to the night shift had been extended. Shop steward Sal Confusione explained that assignments were based on seniority. Barbieri argued that the seniority list was wrong, claiming that he had more company seniority than two men who were ahead of him on the list. Confusione replied that, though the two men may not have worked as long at the company, they had been given additional union seniority to compensate them for the fact that new employees had been improperly hired at Perma-Line while they were on layoff. Barbieri took his complaint to management. In the presence of two company men and a union business representative, Barbieri and Confusione got into a confrontation, the details of which were

---

* Of the Southern District of New York, sitting by designation.

1. Rule 11 says:

 Fighting ..... (A) Aggressor ...... DISCHARGE
 (B) Defender ...... Warning

later disputed, but the upshot of which was that both were discharged for "fighting."

The collective bargaining agreement contains no provision for arbitration, but Perma-Line and the union made a specific submission to an arbitrator, which read as follows:

Were G. Barbieri and S. Confusione discharged for cause? If not, what shall be the remedy?

Before the arbitrator, Perma-Line argued that Barbieri had been the physical aggressor and Confusione the verbal aggressor, and that both had been properly discharged for cause. The union contended that no fight had occurred, that Work Rule 11 is vague and unreasonable, and that the remedy of discharge was in any event inappropriate.

The arbitrator found that the Work Rule is not unreasonable; that Confusione, by approaching Barbieri "in a menacing, threatening manner . . . created the fight"; and that Barbieri was "not an aggressor" and should have been given a warning but not discharged. The arbitrator ordered that Barbieri be reinstated with back pay. As to Confusione, the arbitrator said that the evidence and Confusione's attitude "might have led me to conclude that discharge is warranted pursuant to Rule # 11," but he concluded that he "need not answer that question." Instead, he held that a work rule cannot "run afoul of" the collective bargaining agreement and that Rule 11 does so because Article V, Section 2 of the agreement provides that stewards may be discharged only with the consent of the union. Noting the apparent inconsistency between Article II, Section 2 (which takes discharges for "just cause" outside of the terms of the collective bargaining agreement) and Article V, Section 2 (which allows union veto of shop steward discharges), the arbitrator decided that the latter "specific clause" must be held to control over the former "general one." While the arbitrator thought Article V, Section 2 "unusual" and conceded that it might be "unreasonable," he felt himself bound by its plain meaning and Work Rule 11 therefore of no effect in this case. The arbitrator ordered that Confusione be reinstated but, because he had been the aggressor, without back pay.

Perma-Line petitioned the district court to vacate the arbitration award pursuant to section 10 of the Federal Arbitration Act, 9 U.S.C. § 10. The court, on cross motions for summary judgment, expressed the view that the arbitrator's analysis of the collective bargaining agreement was erroneous, because Article II, Section 2 suggests that "discharges for cause" are *not* subject to the other provisions of the agreement. But the court considered itself bound by the arbitrator's judgment as to construction of the contract, citing *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960) ("so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his"). The district court also held that Article V, Section 2 is not plainly contrary to the policy of the federal labor laws, distinguishing *NLRB v. Milk Drivers Local 338*, 531 F.2d 1162 (2d Cir. 1976), the principal relevant case in this circuit. Accordingly, the court confirmed the arbitration award and this appeal ensued.

## DISCUSSION

What first appears as a rather simple state of facts and a simple set of questions turns out to be a veritable quagmire of labor arbitration law. As Judge Cannella pointed out, it seems plain that the arbitrator misconstrued the collective bargaining agreement, for Article II, Section 2 makes the agreement inapplicable to discharges with cause. But as Judge Cannella also pointed out, and the parties of course realize, if there is one thing that is clear in the law of labor arbitration generally it is that, as the so-called Steelworkers Trilogy established, "mere" mistake of law on the part of an arbitrator interpreting a collective bargaining agreement is insufficient reason to set aside an award. *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403

(1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). And Perma-Line does not argue that the arbitrator's interpretation of the collective bargaining agreement amounted to a "manifest disregard" of the law, as delimited in *Wilko v. Swan*, 346 U.S. 427, 436–37, 74 S.Ct. 182, 187–88, 98 L.Ed. 168 (1953); *see Saxis Steamship Co. v. Multifacs International Traders, Inc.*, 375 F.2d 577, 581–82 (2d Cir. 1967). Rather, Perma-Line contends here as it did below that the arbitrator failed to decide the stipulated issue submitted by the parties and thereby so imperfectly executed his power that a final and definite award was not made, a circumstance which is a ground for vacating an award under the Federal Arbitration Act, 9 U.S.C. § 10(d).[2] Perma-Line argues, further, that the arbitrator exceeded his power by relying on Article V, Section 2 of the collective bargaining agreement, which was not within the scope of the stipulated submission. These matters the union, of course, disputes. But even these arguments do not exhaust the arrows in Perma-Line's quiver.

Perma-Line also contends that Article V, Section 2 of the collective bargaining agreement is presumptively illegal as a glorified "superseniority" clause, *see NLRB v. Local 443, International Brotherhood of Teamsters*, 600 F.2d 411 (2d Cir. 1979); *Dairylea Cooperative Inc.*, 219 N.L.R.B. 656 (1975), *enforced sub nom. NLRB v. Milk Drivers Local 338*, 531 F.2d 1162 (2d Cir. 1976). And, the argument runs, the union failed to meet its heavy burden under *Local 443* and *Milk Drivers* of showing legitimate and substantial business justification for such a superseniority provision. Perma-Line maintains both that an illegal contract provision cannot form the basis for an arbitration award and that the question whether a provision in a collective bargaining agreement violates federal labor law is a matter for the court to decide irrespective of any holding of the arbitrator, *see Danielson v. International Organization of Masters, Mates and Pilots*, 521 F.2d 747, 755 (2d Cir. 1975).

The union responds that as a matter of law the illegality argument may not be raised for illegality, too, is an issue as to which the arbitrator's decision is binding, even if it is erroneous; and that Perma-Line waived the illegality question by not raising it before the arbitrator. The union argues in the alternative that a provision requiring union consent to the discharge of a shop steward is perfectly justified as a matter of good labor-management practice in order to keep the industrial peace; and that in any event Article V, Section 2 is legal as applied here because it protects a steward only while he is acting as steward and Confusione was engaged in his duties as shop steward when he got into the fight. From this wealth of arguments made by the parties on a narrow set of facts, it may be seen that this is one of those cases that, as Chief Justice Bleckley once commented, "tax the anxious diligence of a court not by their difficulty but their simplicity," *Wells v. Mayor of Savannah*, 87 Ga. 397, 398, 13 S.E. 442 (1891).

Perma-Line's first argument, that the arbitrator "imperfectly executed" his powers by failing to decide the stipulated issue, thereby not making a final and definite award, is rather readily disposed of. It is argued that the arbitrator, by virtue of his own language—"I need not answer th[e] question" whether "discharge is warranted pursuant to Rule # 11"—demonstrated that he was not answering the first question submitted to him, *i. e.*, whether Confu-

---

**2.** 9 U.S.C. § 10(d) provides:

In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

. . . . .

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

sione had been discharged for cause. However, the arbitrator's order that Confusione be reinstated without back pay is clear and definite. And implicit in this order is a finding that Confusione was discharged for insufficient "cause," as the arbitrator interpreted that term. Thus, the import of the arbitrator's decision was that there could be no just cause for the discharge of a shop steward without union consent. This interpretation based on the contract made it unnecessary for the arbitrator to decide whether, on the facts, Confusione was an "aggressor" under Work Rule 11. The award was "mutual, final, and definite" within the meaning of 9 U.S.C. § 10(d),[3] for all issues were laid to rest, *see Puerto Rico Maritime Shipping Authority v. Star Lines Ltd.*, 454 F.Supp. 368, 374 (S.D.N.Y.1978).

 The converse of Perma-Line's argument is its contention that the arbitrator exceeded his authority by looking to the collective bargaining agreement in order to determine whether Confusione had been discharged for cause. This argument is also rather easily disposed of. An arbitrator need not determine the facts in a vacuum. He must have freedom to consider and decide the submitted issues in light of all relevant data, which in this case includes the collective bargaining agreement. *Chauffeurs Local 878 v. Coca-Cola Bottling Co.*, 613 F.2d 716 (8th Cir.), *cert. denied*, 446 U.S. 988, 100 S.Ct. 2975, 64 L.Ed.2d 847 (1980), is instructive. There an arbitrator had held that although there were facts sufficient to show just cause for discharge, there was not just cause as a matter of law because the employer had not followed procedural due process: The grievant had been given no opportunity to present his side of the case. Though the collective bargaining

agreement was "silent on what procedural prerequisites attach to the requirement that a discharge be for just cause," the court held that the arbitrator could properly imply from the term "just cause" the requirement of procedural due process. *Id.* at 719. A fortiori, we think the arbitrator here, with equal propriety, could look to the collective bargaining agreement as a whole for further enlightenment on the meaning of just cause. As in *Coca-Cola*, the arbitrator in the instant case found that, although "cause" for Confusione's discharge might be found on the facts, there was a fatal legal defect—in this case, the conflict with a provision of the collective bargaining agreement. Even though we believe that the arbitrator misconstrued the agreement, as we have said above, he was entitled to examine it. And interpreting Article V, Section 2 as he did, he found in substance that there could be no just cause for discharging a shop steward absent union consent. We hold that he did not exceed his authority in so deciding.

Perma-Line contends, more persuasively, that Article V, Section 2 is illegal as an unjustifiable "superseniority" clause that discriminates with respect to terms and conditions of employment, in violation of sections 8(a)(3) and 8(b)(2) of the National Labor Relations Act (the Act), 29 U.S.C. §§ 158(a)(3) and (b)(2),[4] for the purpose of encouraging "employees to be 'good' union members, to support and assist the union, or to participate in union activities," *NLRB v. Milk Drivers Local 338*, 531 F.2d 1162, 1165 (2d Cir. 1976). The question is not, as the union contends, foreclosed as a matter of law from our consideration. We have held that a collective bargaining agreement provision that violates federal labor law is

---

3. See note 2 *supra*.

4. Section 8(a)(3) of the Act, 29 U.S.C. § 158(a)(3), provides in relevant part:

It shall be an unfair labor practice for an employer—

. . . . .

(3) by discrimination in regard to hire or tenure of employment or any term or condi-

tion of employment to encourage or discourage membership in any labor organization.

Section 8(b)(2), 29 U.S.C. § 158(b)(2), provides in relevant part:

It shall be an unfair labor practice for a labor organization or its agents—

. . . . .

(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3).

" 'unenforcible and void, [and] should not and cannot form the basis for any arbitration award, irrespective of the holding of the arbitrator.' " *Danielson v. International Organization of Masters, Mates and Pilots,* 521 F.2d 747, 755 (2d Cir. 1975) (quoting *McLeod v. American Federation of Television and Radio Artists, New York Local,* 234 F.Supp. 832, 841 (S.D.N.Y.1964), aff'd, 351 F.2d 310 (2d Cir. 1965) (per curiam); *see also Hurd v. Hodge,* 334 U.S. 24, 34–35, 68 S.Ct. 847, 852–53, 92 L.Ed. 1187 (1948); *Local 453, IUEW v. Otis Elevator Co.,* 314 F.2d 25, 29 (2d Cir.), cert. denied, 373 U.S. 949, 83 S.Ct. 1680, 10 L.Ed.2d 705 (1963). The union asserts that the question of the validity of Article V, Section 2 was a question of law, arising out of the submitted issues, to be determined by the arbitrator. But, as we recently said in *Diapulse Corp. of America v. Carba, Ltd.,* 626 F.2d 1108, 1110–11 (2d Cir. 1980):

> [a]lthough contravention of public policy is not one of the specific grounds for vacation set forth in section 10 of the Federal Arbitration Act, an award may be set aside if it compels the violation of law or is contrary to a well accepted and deep rooted public policy. *Local 453, IUEW v. Otis Elevator Co.,* 314 F.2d 25, 29 (2d Cir.), cert. denied, 373 U.S. 949, 83 S.Ct. 1680, 10 L.Ed.2d 705 (1963); *Metal Product Workers Union v. Torrington Co.,* 358 F.2d 103, 106 (2d Cir. 1966); *Matter of Sprinzen,* 46 N.Y.2d 623, 629–32, 415 N.Y.S.2d 974, 389 N.E.2d 456 (1979).

If, thus, the award in question is contrary to law or public policy it is open to, indeed it is incumbent upon, this court to step in.[5] And we will vacate an award as contrary to public policy if it seeks to enforce a collective bargaining agreement provision that is illegal under the National Labor Relations Act. *See General Warehousemen Local 767 v. Standard Brands, Inc.,* 579 F.2d 1282, 1291–94 (5th Cir. 1978) (en banc), cert. dismissed, 441 U.S. 957, 99 S.Ct. 2420, 60 L.Ed.2d 1075 (1979); *Associated Milk Dealers, Inc. v. Milk Drivers Local 753,* 422 F.2d 546, 552 (7th Cir. 1970); *cf. Sperry Systems Management Division, Sperry Rand Corp. v. NLRB,* 492 F.2d 63 (2d Cir.) (union's demand that company comply with arbitration award which would infringe rights of employees under the Act found to be an unfair labor practice), cert. denied, 419 U.S. 831, 95 S.Ct. 55, 42 L.Ed.2d 57 (1974); *Local 7–210, Oil, Chemical and Atomic Workers v. Union Tank Car Co.,* 475 F.2d 194 (7th Cir.) (arbitration award would not be enforced when contrary to subsequent Board ruling on the parties' rights under the Act), cert. denied, 414 U.S. 875, 94 S.Ct. 68, 38 L.Ed.2d 210 (1973); *Telephone Workers Union Local 827 v. New Jersey Bell Telephone Co.,* 450 F.Supp. 284 (D.N.J.1977) (court refused to enforce arbitration award that conflicted with the terms of a consent decree entered in Title VII suit against the employer), aff'd, 584 F.2d 31 (3d Cir. 1978). *See generally* Kaden, *Judges and Arbitrators: Observations on the Scope of Judicial Review,* 80 Colum.L.Rev. 267, 287–89 (1980).

We think that Article V, Section 2 is presumptively illegal under the Act, as explicated in *Milk Drivers,* 531 F.2d at 1166, and *NLRB v. Local 443, International Brotherhood of Teamsters,* 600 F.2d 411, 412–13 (2d Cir. 1979). Discrimination which encourages employees to be "good" union members violates section 8(a)(3) and 8(b)(2) of the Act, *Radio Officers' Union v. NLRB,* 347 U.S. 17, 39–42, 74 S.Ct. 323, 335–37, 98 L.Ed. 455 (1954). We held in *Milk Drivers* that a clause that confers superseniority on

---

5. The union's argument that Perma-Line waived any question of illegality of Article V, Section 2 by not raising the issue before the arbitrator itself comes late, since this affirmative defense was not presented to or considered by the district court. *See* Fed.R.Civ.P. 8(c); *Radio Corp. of America v. Radio Station KYEM, Inc.,* 424 F.2d 14, 17 (10th Cir. 1970). The parties' approach to the illegality question is undeveloped in this record—it is not mentioned in the arbitrator's findings. If anything, the arbitrator's statements as to the contentions of the parties show that the union was not (at least initially) relying on the Article V, Section 2 requirement of union consent to avoid Confusione's discharge. For the union now to claim that Perma-Line waived the illegality issue is, therefore, a little unfair at best.

shop stewards for all purposes is illegal, absent a showing by the union of legitimate and substantial business justification for the provision. 531 F.2d at 1166; *see Local 443*, 600 F.2d at 413 (union demonstrated legitimate justification for superseniority as to shift selection). Article V, Section 2 is the superseniority clause *ne plus ultra.* No matter what the shop steward's conduct— be it spitting in the face of the superintendent, slashing the tires of the foreman's automobile, throwing a monkey wrench into the paint-mixing machine—as a shop steward, he is protected from discharge. Such protection is the ultimate benefit a union can give to a union member. The statement of it demonstrates its tendency to "encourage" employees to be "good" union members. *See Radio Officers' Union*, 347 U.S. at 48–52, 74 S.Ct. at 339–42 (tendency to encourage union membership may reasonably be inferred from the nature of the discrimination). Article V, Section 2 thus is presumptively illegal and the burden is on the union to justify the provision, *Local 443*, 600 F.2d at 413; *Milk Drivers*, 531 F.2d at 1166–67; *see NLRB v. Great Dane Trailers, Inc.*, 388 U.S. 26, 33–35, 87 S.Ct. 1792, 1797–98, 18 L.Ed.2d 1027 (1967).

The union seeks to justify the clause on the basis that a shop steward should have continuity in employment and not be subject either to economic layoff or to discharge by reason of any act arising out of his conduct in carrying out his shop steward's function. This is not, of course, what Article V, Section 2 says. And the fact is that a shop steward may furnish good cause for his discharge even while he is engaged in the performance of his duties as shop steward; it is difficult to understand a legitimate justification for the clause in such a case.

The union's more subtle suggestion, never quite explicit, is that a shop steward's functions may involve higher risks, such as the risk of altercations arising out of seniority disputes, work assignments and the like, and therefore that he ought to be afforded the additional protection this clause gives. Put another way, it could be suggested that

*as applied* to Confusione in this case, there was justification for affording him protection, making Article V, Section 2, thus narrowed, not the discriminatory clause it otherwise appears to be. But even this limitation might not serve to satisfy the policies of the Act, for the mere existence of the broad superseniority clause (as construed by the arbitrator) serves to perpetuate "the mischief" of its discriminatory effect. *See Local 443*, 600 F.2d at 413.

The record before us on the issue of justification is thin (though the theoretical arguments of counsel are heavy). We reverse and remand for further development of the record on this issue, to give the union an opportunity to meet with evidence what is a rather heavy burden of showing justification for the presumptively invalid Article V, Section 2. If the union is unable to demonstrate legitimate and substantial justification for the provision, then the arbitrator's award cannot be confirmed, for by ordering Confusione reinstated the very vice of the superseniority clause would be fostered.

Judgment reversed; cause remanded.