In re PAN AMERICAN CORPORATION, et al., Debtors.

PAN AMERICAN WORLD AIRWAYS, INC., Appellant,

v.

AIR LINE PILOTS ASSOCIATION, Appellee.

No. 91 CV 3862(KMW).

United States District Court, S.D. New York.

April 9, 1992.

bankruptcy court on May 31, 1991, confirming an arbitration award rendered by the Pan American World Airways ("Pan Am") and the Air Line Pilots Association ("ALPA") System Board of Adjustment ("Board"). Appellant argues that the arbitration award should be vacated and remanded to a new Adjustment Board. Appellee argues that the bankruptcy decision should be affirmed. For the reasons stated below, Judge Blackshear's order confirming the arbitration award is hereby affirmed.

## BACKGROUND

In late November, 1988, Appellant learned of allegations that Captain Harold Gay, Jr. permitted a flight attendant to manipulate the flight controls of a 747 aircraft during Appellant's Flight 81 on September 25, 1988, a regularly scheduled flight from New York to Los Angeles. After Regional Chief Pilot Daniel Condon conducted an investigation of the allegations, Appellant discharged Gay effective December 31, 1988. Appellant discharged Gay for allegedly violating certain Federal Aviation Regulations and Appellant's Flight Operations Manual, as well as standards imposed on all Appellant's employees by the Employee Rules of Conduct.

Appellee, Captain Gay's union, filed a grievance regarding Gay's discharge before the Board, which was established by the Pan Am–ALPA collective bargaining agreement ("Agreement"), pursuant to Section 204 of the Railway Labor Act, as amended, 45 U.S.C. § 184. The question presented to the Board by the grievance was "whether the Carrier [Pan Am] had just and/or sufficient cause to discharge Captain Gay." 3/17/89 Letter from Henry Duffy to Captain R. Anderson, at 1.

On November 29, 1990, after hearing testimony from twenty-three witnesses and considering some seventy-one exhibits, the five-member Board rendered a seventy-five page decision sustaining Gay's grievance based on its finding that Gay was deprived of a full and fair investigation of the charges against him ("Award"). The Board did not make a finding regarding

Joseph R. Knock, Morgan, Lewis & Bockius, New York City, for appellant.

Gene Granof, Air Line Pilots Ass'n, Washington, D.C., Babette S. Ceccotti, Cohen, Weiss & Simon, New York City, for appellee.

## MEMORANDUM OPINION AND ORDER

KIMBA M. WOOD, District Judge.

This case is an appeal from the decision of the Hon. Cornelius Blackshear of the United States Bankruptcy Court for the Southern District of New York. Appellant appeals the final order entered by the

whether or not Gay had actually committed the conduct with which he was charged; instead, it stated that, although it was "not inconceivable, and in fact there is some reasonable cause to believe, that Captain Gay did not act appropriately, ... it is equally likely that Captain Gay was always in control of the aircraft...." Award at 67. The Board also stated that Captain Gay's denial that he allowed a flight attendant to fly the plane had "not been proven, by substantial and convincing evidence, to have been untruthful." Award, at 72. In contrast to its refusal to decide whether Gay committed the alleged misconduct, the Board made numerous findings regarding serious flaws in Appellant's pre-discharge investigation into Appellant's misconduct. The Board found, for example, that there was a delay in instigating the investigation, that Condon instituted the investigation only after being threatened with publicity about the alleged incident if he did not do so, and that Condon improperly used leading questions in conducting the investigation. After concluding that "Captain Gay's rights to a full and fair investigation were sufficiently violated to require that the grievance be sustained," the Board ordered that Gay be reinstated with back pay and full seniority. Award, at 74–75.

On December 12, 1990, Appellant commenced this action in the Eastern District of New York to vacate the Award and to remand the Gay grievance for further proceedings before a different Board. In particular, Appellant requested that a new Board be ordered to determine whether Gay committed the alleged safety violations during Flight 81. On December 28, 1990, Appellee counterclaimed, seeking to have the Award enforced.

Appellant filed for protection under Chapter 11 of the Bankruptcy Code on January 8, 1991. This case was transferred to the United States Bankruptcy Court for the Southern District of New York, and the parties filed cross-motions for summary judgment, respectively seeking to vacate and to enforce the Award. On May 23, 1991, Judge Blackshear heard argument on the cross-motions and rendered his decision

denying Appellant's motion to vacate and granting Appellee's motion to enforce the Award. The bankruptcy court emphasized the limited scope of judicial review of arbitration awards stemming from collective bargaining agreements. The court considered not whether Gay's grievance had merit but rather whether it was proper for the Board to focus on Appellant's investigatory process in determining whether Appellant had just cause to fire Gay. The court held that the Board acted properly in considering this due process issue because § 32(E)(1) of the collective bargaining agreement implies a due process requirement. Accordingly, the court concluded that "the Adjustment Board did render a clear and final determination of the issue presented to it. It determined that Captain Gay was not discharged for just cause." Tr. of Oral Op. at 94.

On June 7, 1991, Appellant filed a notice of appeal with respect to the bankruptcy court's May 23, 1991 decision. Appellant argues that this Court should reverse the bankruptcy court's decision and enter an order vacating the Gay Award and remanding the Gay grievance to a new board to determine: (i) whether Gay was guilty of the misconduct set forth in Appellant's December 21, 1988 discharge letter to Gay; and (ii) if so, whether Appellant properly discharged Gay for just cause. Appellee argues that this Court should affirm the bankruptcy court order. For the reasons stated below, the Court affirms the bankruptcy court order.

## DISCUSSION

■ The Railway Labor Act promotes efficiency in the context of labor-management relations by creating a preference for the resolution through arbitration of grievances arising out of collective bargaining agreements. *See Union Pacific R.R. Co. v. Sheehan,* 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978), *reh. denied* 439 U.S. 1135, 99 S.Ct. 1060, 59 L.Ed.2d 98 (1979). Adjustment Board decisions issued pursuant to the Railway Labor Act are "final and binding upon both parties to the dispute." 45 U.S.C. § 153, First(m).

It is well established that "judicial review of Adjustment Board decisions is 'among the narrowest known to the law.'" *Sheehan,* 439 U.S. at 91, 99 S.Ct. at 401 (citations omitted). "[C]ourts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987). "As long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice,' the award is legitimate." *Id.* (citations omitted).

Although "the findings and order of the [Board] shall be conclusive on the parties," a district court may, upon application of one of the parties, review an Adjustment Board decision. 45 U.S.C. § 153, First (q). A court may set aside or remand an Adjustment Board decision only on three grounds: "[1] for failure of the [Board] to comply with the requirements of [the RLA], [2] for failure of the order to conform, or confine itself, to matters within the scope of the [Board's] jurisdiction, or [3] for fraud or corruption by a member of the [Board] making the order." 45 U.S.C. § 153, First (q). In addition, a court may overturn an arbitration award if enforcement of the award would violate some explicit public policy of the United States that is "'well defined and dominant, and is to be ascertained "by reference to the laws and legal precedents and not from general considerations of supposed public interests."'" *Misco,* 108 S.Ct. at 373 (citations omitted).

## I. *Jurisdiction*

Appellant first argues that the Adjustment Board exceeded its jurisdiction because it never answered the question presented by the parties of whether Appellant had just cause to fire Captain Gay. (Appellant's Mem. at 13). According to Appellant, a finding regarding just cause necessarily includes a determination of the underlying issue of whether Captain Gay in fact permitted a flight attendant to manipulate the controls of Flight 81, and if so,

whether that misconduct warranted Appellant's discharge of Gay. (Transcript of August 6, 1991 Hearing ("Tr.") at 7–8, 19–20). Appellee argues that, in finding that Appellant did not have just cause to discharge Gay, the Board made an implicit determination that Appellant did not meet its burden of proving that Gay had undertaken the alleged misconduct. (Tr. at 35).

In arguing that a just cause determination requires a decision regarding whether the employee committed the alleged wrongdoing, Appellant cites one authority, *Stroehmann Bakeries, Inc. v. Local 776 Int'l Bhd. of Teamsters,* 762 F.Supp. 1187 (M.D.Pa.1991). In *Stroehmann,* an employee was discharged for allegedly sexually assaulting another employee. *Id.* at 1188. The employee's union filed a grievance, which was sent to arbitration. Although the arbitrator made no finding regarding whether the employee committed the alleged assault, he ordered that the employee be reinstated because of flaws in the employer's investigation. *Id.* A Pennsylvania district court vacated and remanded the arbitration award because the arbitrator had not decided whether the alleged assault occurred and because the court thought that the award would violate the strong public policy against harassment. *Id.* at 1189–90. However, the decision in *Stroehmann* reflects the court's concern with (1) evidence that the arbitrator himself was biased and insensitive, and (2) the arbitrator's failure to explain how the employer's investigation was deficient. *Id.* at 1189. In contrast, Appellants have presented no evidence that the Adjustment Board in this case was biased, and the Board provided a detailed explanation of why the employer's investigation was inadequate. Award at 73–74 (summarizing the flaws in the investigation).

Furthermore, the Pennsylvania district court decision in *Stroehmann* appears to conflict with the Second Circuit's holding that it may be "unnecessary" to make a finding on the underlying facts if a just cause determination can be made on other grounds. *See Perma–Line Corp. v. Sign Pictorial and Display Union, Local 230,* 639 F.2d 890, 894 (2d Cir.1981). In *Perma–*

*Line,* the Second Circuit stated that "the arbitrator's decision ... that there could be no just cause for the discharge of a shop steward without union consent ... made it unnecessary for the arbitrator to decide whether, on the facts, [the employee] was an 'aggressor' under Work Rule 11." *Id.* In other words, the Second Circuit upheld an arbitration decision that an employer did not have just cause for discharging an employee, in spite of the arbitrator's failure to make a finding with respect to the alleged misconduct, because the employer's discharge decision was procedurally defective.

After reviewing the Board's decision, the Court agrees with Judge Blackshear that the Board did not decide the underlying question of whether Captain Gay allowed a flight attendant to fly the plane. (Bankruptcy Court Transcript, D 387). The Court further finds that the Board did not exceed its jurisdiction by failing to reach the underlying issue, because it found a sufficient basis for sustaining the grievance in the lack of due process provided during the investigation.[1]

Appellant further argues that the Board exceeded its jurisdiction by imposing on Appellant procedural due process requirements that do not draw their essence from the collective bargaining agreement. (Tr. at 23). The Board directed Appellant to reinstate Gay in accordance with Section 32K of the collective bargaining agreement, which provides that "[i]f, as a result of any Grievance Hearing ... a pilot who has been held out of service, with or without pay, is exonerated, he shall be reinstated without loss of seniority." Award at 75; § 32K of Agreement. Appellant argues that, because the Board did not "exonerate" Captain Gay, its reinstatement order did not "draw its essence" from the Agreement. (Appellant's Mem. at 43–44).

In making this argument, Appellant overlooks a crucial point. The Board based its decision that Appellant lacked just cause for discharging Gay and that Gay must be reinstated not simply on Section 32K of the collective bargaining agreement, but also on Section 32E, which states that "[a] pilot shall not be disciplined or discharged without an investigation and an opportunity for a Preliminary Hearing." Award, at 53, 69; § 32E of Agreement. Contrary to Appellant's contention that the Board erroneously injected due process considerations into the grievance process, and that the Award did not "draw its essence" from the Agreement, Section 32E requires an adjustment board to include such procedural considerations in its just cause determination. As the Second Circuit stated in *Perma–Line,* "[a]n arbitrator need not determine the facts in a vacuum. He must have freedom to consider and decide the submitted issues in light of all relevant data, which ... includes the collective bargaining agreement." *Perma–Line,* at 894.

Moreover, the courts of several circuits have held that arbitration regarding whether there is just cause to discharge an employee includes considerations of procedural due process even if there is no explicit due process provision in the contract. *See, e.g., Perma–Line,* 639 F.2d at 894; *Chauffeurs, Teamsters and Helpers v. Coca-Cola Bottling Co.,* 613 F.2d 716, 719–21 (8th Cir.), *cert. denied,* 446 U.S. 988, 100 S.Ct. 2975, 64 L.Ed.2d 847 (1980); *Federated Dep't Stores v. United Food and Commercial Workers Union, Local 1442,* 901 F.2d 1494, 1497–98 (9th Cir.1990); *Super Tire Engineering Co. v. Teamsters Local Union No. 676,* 721 F.2d 121, 125 (3d Cir. 1983), *cert. denied,* 469 U.S. 817, 105 S.Ct. 83, 83 L.Ed.2d 31 (1984). Additionally, even when arbitrators have found that the alleged misconduct occurred, courts have upheld reinstatement decisions when the employer's investigation failed to accord procedural due process to the employee. *See, e.g., Coca–Cola,* 613 F.2d at 717, 721; *Federated Dep't Stores,* 901 F.2d at 1498;

---

1. Appellant argues that arbitration awards are not final unless they decide every issue presented to them by the parties. Appellant's Mem. at 39, *citing Trade & Transport, Inc. v. Natural Petroleum Charterers Inc.,* 931 F.2d 191, 195 (2d Cir.1991). This argument merely begs the question, given that the parties disagree as to the scope of the issue presented to the Board for decision.

*Super Tire,* 721 F.2d at 122, 125. Therefore, the Court rejects Appellant's argument that the Board exceeded its jurisdiction by failing to render a decision regarding the underlying misconduct and by basing its decision on due process grounds.

### II. *Public Policy*

Finally, Appellant argues that even if the arbitrator acted within his jurisdiction, the Award must be vacated because it violates the strong, explicit public policy of fostering airline safety. Appellant's Mem. at 23–37. Appellee responds that the Award cannot be vacated on public policy grounds and that Appellant is attempting improperly to reargue the facts of the case. Appellee's Mem. at 29–40.

■ It is well established that "a court may refuse to enforce an arbitrator's award under a collective bargaining agreement if the award is contrary to public policy." *Newsday, Inc. v. Long Island Typographical Union, No. 915 CWA,* 915 F.2d 840, 844 (2d Cir.1990), *cert. denied* —— U.S. ——, 111 S.Ct. 1314, 113 L.Ed.2d 247 (1991), *citing Misco,* 108 S.Ct. at 373. The public policy must stem from " ' "laws and legal precedents and not from general considerations of supposed public interests." ' " *Misco,* 108 S.Ct. at 374 (citations omitted). The public policy strongly favoring safety in the airline industry has been recognized repeatedly in legal decisions. *See, e.g., Delta Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l,* 861 F.2d 665, 672–674 (11th Cir.1988), *reh. denied, en banc,* 867 F.2d 1431, and *cert. denied Air Line Pilots Ass'n, Int'l v. Delta Air Lines, Inc.,* 493 U.S. 871, 110 S.Ct. 201, 107 L.Ed.2d 154 (1989); *Robinson v. American Airlines, Inc.,* 908 F.2d 1020, 1023 (D.C.Cir.1990); *World Airways, Inc. v. Int'l Bhd. of Teamsters, etc.,* 578 F.2d 800, 803 (9th Cir.1978).

■ On the other hand, the risk that an arbitration award may violate some explicit public policy is not an "excuse" for courts to perform the work of arbitrators. *Id.*[2] The issue for the court "is not whether grievant's [alleged mis]conduct ... violated some public policy or law, but rather whether the award requiring the reinstatement of a grievance ... violated some explicit public policy." *Interstate Brands Corp., Butternut Bread Div. v. Chauffeurs, Teamsters, etc., Local Union No. 135,* 909 F.2d 885, 893 (6th Cir.), *reh. denied, en banc,* 1990 WL 102873, (1990) and *cert. denied* —— U.S. ——, 111 S.Ct. 1104, 113 L.Ed.2d 214 (1991). Furthermore, the cases in which courts have vacated arbitration awards on airline safety public policy grounds generally involve awards that contain specific findings that the employee committed the alleged offense. *See, e.g., Delta,* 861 F.2d at 666; *World Airways,* 578 F.2d at 802.

■ In contrast, the Board in this case refused to make a finding regarding whether Gay allowed a flight attendant to fly the plane. Appellant's argument that the Board's reinstatement decision violates the public policy of airline safety assumes that Gay committed the alleged offense, because Condon so concluded. Appellant's Mem. at 36; Appellee Gay's Opp.Mem. at 10. Appellant argues that, because the Board "did not exonerate Gay of misconduct[,] ... Condon's conclusion [that Gay did permit a flight attendant to fly the plane] still stands." Appellant's Mem. at 36. However, Appellant's reliance on Condon's conclusion is substantially undermined by the Board's finding that there were serious flaws in the underlying investigation. Furthermore, on November 26, 1991, the Chief Administrative Law Judge of the National Transportation Safety Board ("NTSB") issued a bench decision finding that the flight attendant did not manipulate the controls of Flight 81 and "concluding that Captain Gay 'did not violate' Federal Aviation Regulations as alleged by the [Federal Aviation Association ("FAA")]." 12/12/91 Letter from Eugene Granof to the Court, at 1, *citing* Transcript of Oral Initial Decision and Order at 926, lines 18–20 & 22. In light of the Board's findings regarding the flaws in Condon's investigation of the alleged misconduct and

---

**2.** Appellee aptly argues that the court should not remand the case to a new Board because of an alleged public policy violation if the result is simply a rehearing on the merits. Appellee's Opp.Mem. at 30. A remand for the purposes of retrying the case would undercut the efficiency of labor arbitration. *See, e.g., Sheehan,* 439 U.S. at 94, 99 S.Ct. at 402.

in light of the recent NTSB finding that the misconduct did not occur, the Court cannot conclude that Captain Gay allowed a flight attendant to fly the plane. *Cf. Northwest Airlines v. Air Line Pilots Ass'n*, 808 F.2d 76, 83 (D.C.Cir.1987), *cert. denied*, 486 U.S. 1014, 108 S.Ct. 1751, 100 L.Ed.2d 213 (1988) (deferring to FAA finding that pilot was fit and qualified to fly and stating that "[i]t would be the height of judicial chutzpah for [the court] to second-guess the present judgment of the FAA, ... the agency that is charged with the enforcement of the public policy at issue"). Therefore, the Court cannot conclude that an affirmation of the bankruptcy court decision would violate the public policy favoring airline safety.[3]

## CONCLUSION

For the reasons stated above, the Court affirms the bankruptcy court decision confirming the Adjustment Board decision to reinstate Captain Gay with seniority and back pay.

SO ORDERED.

**3.** The Court also notes that had Appellant been particularly concerned about the public policy favoring airline safety, it could have created an exception to the arbitration provision of the collective bargaining agreement, for example, forbidding the arbitration of grievances involving airline safety issues. *See Northwest*, 808 F.2d at 80–81, 83–84 (finding "nothing" in the collective bargaining agreement that excluded safety-related grievances from arbitration and stating that the airline was "free to negotiate with ALPA to remove the application of safety rules from the jurisdiction of the Board or to reduce the amount of discretion given to the Board in such matters").